# Wheeling.

## JOHN ECHOLS *vs*. J. G. AND J. M. STAUNTON.

### August Term, 1869.

1. It is competent for one party, on the trial of a cause, to read in his own behalf a deposition regularly taken and filed by the other. And although a deposition in such case may be certified jointly with the depositions of other witnesses, it may be detached and read separately.

2. A party cannot justify a trespass committed, by the fact of his having been engaged with the armed forces of the rebellion, and acting under the authority of the so-called Confederate States government.

3. It is not necessary to render a party commanding in the armies of the so-called Confederate States liable for a trespass, that it should be done directly through or by his orders; it is sufficient if he advised or aided or abetted those who committed the trespass.

4. The fact that a party was in command of armed forces of the so-called Confederate States does not render him liable for a trespass committed by his command, unless the jury believes, from the evidence, that that fact and the evidence connects him with the trespass or with those who did commit it.

5. Where it appears that a party was in command of armed forces of the so-called Confederate States, and had his headquarters at a certain place, and property was taken by persons under his command in pursuance of orders from headquarters, it is sufficient to connect him with the trespass and make him liable therefor.

At the July rules, 1865, the plaintiffs, by the firm name of J. G. & J. M. Staunton & Co., filed a declaration in trespass on the case in the clerk's office of the circuit court of Kanawha county, against the defendant, John Echols, alleging that on the 25th day of October, 1862, the defendant instigated and procured and ordered others to seize, take and carry away, thirty barrels of oil, the property of the plaintiff, from the landing at Malden in said county, of the value of 1,935 dollars. The defendant demurred to the

declaration, demurrer was overruled, and he pleaded not guilty, on which issue was joined.

In June, 1866, a trial was had and verdict rendered for the plaintiffs for 1,035 dollars, with interest from November 4th, 1865. The defendant moved the court to set the verdict aside and grant a new trial, which motion was overruled and judgment given on the verdict.

The defendant took three bills of exception. The first bill was because after the plaintiffs had introduced their evidence they announced themselves through except the reading of a deposition of one Edward McMahon that had been taken by the defendant and had been taken and certified together with the depositions of two other witnesses, and they stated that if the defendant would read this deposition of McMahon they would then rest their case, the defendant would not say whether he would do so or not, whereupon the court permitted it to be read, and the defendant excepted. The second bill of exceptions was taken to the refusal of the court to give the jury certain instructions substantially as follows : That if the jury believed, from the evidence, that at the time the oil was taken and removed, the defendant was acting as a brigadier general in the Confederate army, commissioned by Jefferson Davis commander-in-chief of the armed forces in rebellion against the United States government, and that the taking and removing was a belligerent act, that the defendant was not liable in the action. This the court refused to give.

The next instruction asked by defendant was that unless the jury were satisfied from the evidence that the defendant, directly or by his orders to others, was engaged in taking and removing the oil, he was not liable; this the court refused to give, but instructed the jury if the defendant was neither directly nor by his orders engaged in taking the oil, yet he would be liable if he advised or aided or abetted those who did take and remove it.

The next instruction was that if the jury believed that the evidence proved the oil to have been taken by a quartermaster in the service of the so-called Confederate States,

and converted to the exclusive use thereof, he was not liable. in this action. This the court also refused.

The next instruction was that the fact that the defendant was in command of the army of the so-called Confederate States in the Kanawha valley at the time the oil was taken, would not make him liable, unless the jury should believe, from the evidence, that he was connected with the taking and removing of the oil. The court refused to give this instruction, but instructed the jury, that the fact of the defendant's being in command of the rebel army could not make him liable, "unless the jury believe, from the evidence, that that fact and the evidence," connected him with the taking and removal, or with parties who did it.

The defendant next moved the court to instruct the jury that he could not be made constructively liable for the trespass of soldiers of the so-called Confederate government, under him, unless the evidence showed that they committed it under the authority of the defendant. The court refused this instruction. The third bill of exceptions was to the refusal of the court to set the verdict aside, and embraced the facts proved as certified by the court as follows: The plaintiffs proved that on the 24th day of October, 1862, they were the owners of thirty barrels of oil stored in Malden, in Kanawha county, in the store-house of Walker & Co.; that the barrels averaged 46 gallons each, and that the oil was worth, at wholesale, 75 cents to 80 cents per gallon, and at retail 1 dollar to 1 dollar and 50 cents per gallon; that said oil was seized and taken away by a man named Mace, acting under orders of E. McMahon, then acting as chief quartermaster in the so-called Confederate army, on the 24th of October, 1862; that W. W. Loring commanded the so-called Confederate forces in Kanawha valley, early in October, until October 15th, 1862, when he was relieved, and the defendant, Echols, was placed in command of said forces; that the defendant, Echols, with his forces, were in Charleston about October 20th, 1862; that the defendant was in command of the so-called Confederate forces at the time the oil was taken, and for several days previously, with his headquar-

ters at Charleston, in said county, and that the said McMahon received orders to take the said oil from headquarters, and that said Loring had retired from the Kanawha valley, and from the command of the forces in said valley, on the 15th or 17th of the said October; that one of the plaintiffs asked payment of McMahon for the said oil, and payment was refused.

The plaintiffs also introduced testimony tending to show that said McMahon gave one of the plaintiffs an official receipt for the oil, and that said McMahon was an acting quartermaster in the so-called Confederate army. They also introduced evidence tending to show that said oil was taken by orders, and at the command of W. W. Loring. But they proved that the said Loring had been relieved of his command six or seven days before the oil was taken.

The defendant, on his part, then introduced testimony tending to show that no orders had been issued by Echols for the seizure or taking away of said oil, and that the oil was taken away between September 25th and October 10th, 1862, for the use of the so-called Confederate government, and was delivered to Thomas L. Brown, at Dublin depot, for that purpose, the said Thomas L. Brown being an acting quartermaster in the so-called Confederate army; and that the orders for seizing and removing said oil were issued by W. W. Loring.

The defendant brought the case here on a writ of supersedeas.

*G. H. Lee* for the plaintiff in error.

*B. H. Smith* for the defendants in error.

BERKSHIRE, J. On the trial of this cause the plaintiffs were permitted to read as evidence on their behalf the deposition of Edward McMahon, which had been taken and filed in the cause by the defendant. The deposition of two other persons were taken by the defendant at the same time and filed with the deposition of McMahon.

The plaintiffs, after they had introduced their other tes-

timony, notified the defendant that they were through with their testimony except the deposition of McMahon, and that they would read it then unless the defendant intended to read it, and that they would rest their case if the defendant would agree to read the said deposition. But the defendant refusing to answer whether he would do so or not, the court permitted the plaintiffs to read it to the jury as evidence on their behalf.

To this ruling the defendant excepted, and it is maintained here that it was improper to allow the deposition to be read by the plaintiffs at the time and under the circumstances it was read, and before the defendant had closed the evidence on his part, and also to detach it from the other two depositions taken and certified jointly with it, and read it separately from the other two.

I think the court committed no error in allowing the deposition to be read, and that it is as competent for one party to read on his own behalf a deposition regularly taken and filed by the other party, as it would be to introduce a witness summoned on behalf of such other party.

I do not think the court erred in refusing to give each of the instructions asked for by the plaintiff in error. The first and third relate to the belligerent rights claimed by him, by reason of which he sought to justify the trespass complained of. This defence, if it could have been made under the plea of not guilty, it has been held by this court, in numerous cases, is wholly inadmissible. The law, I think, is correctly propounded in the instruction given by the court in lieu of the second and fourth instructions asked by the plaintiff in error, and consequently there was no error in refusing to give said instructions.

The remaining error complained of is the ruling of the court in refusing to set aside the verdict and grant a new trial.

From the facts certified as proven on the trial, it appears that at the time the trespass was committed the plaintiff in error was in command of the rebel forces in the Kanawha valley, and was in Charleston with his forces, and had his

headquarters in the said town, about the time the oil was taken from the defendants in error in said town by some of the officers of said army acting under orders, and that the oil was taken in pursuance of orders received by such officers from headquarters.

From this, it appears to me, the plaintiff in error was sufficiently connected with the trespass to make him liable, and I cannot see that the court erred in refusing to set aside the verdict. *Shepherd* vs. *McQuilken*, 1 W. Va. Rep., 90; 2 Hilliard on Tort, 292–3; *Aldred* vs. *Bray*, 41 Missouri, 485.

I think, therefore, the judgment ought to be affirmed, with costs and damages.

The remaining members of the court concurred.

JUDGMENT AFFIRMED.