# WHEELING.

## PEERCE v. KITZMILLER.

Submitted June 22, 1880.   Decided May 6, 1882.

1. Under a Constitution, which divides the government into three distinct departments, viz: the Legislative, the Executive and the Judicial, without special authority in the Constitution for so doing it is beyond the power of the Legislative department to authorize the courts to set aside judgments and grant new trials in cases after the term, at which the judgments were rendered, had passed, for such action would be judicial.   (p. 569.)

2. The people of the State, in their sovereign capacity, have the right in adopting a Constitution for their government to do anything, which they are not prohibited from doing by the Federal Constitution, which was made and ratified by the States themselves.   (p. 572 )

3. Before the ratification of the fourteenth amendment to the Constitution of the United States, the Legislature might, if authorized by the State Constitution, devest vested rights of property, where such rights were not vested by contract.   (p. 572.)

4. Since the ratification of said amendment such vested rights of property by a State can only be devested by "due process of law."   (p. 572.

5. A judgment founded on a tort is in no sense a contract; therefore section 35 of article VIII of the Constitution of West Virginia, which provides, that "No citizen of this State, who aided or participated in the late war between the government of the United States and a part of the people thereof on either side, shall be liable in any proceedings civil or criminal, nor shall his property be seized or sold under final process issued upon judgments or decrees heretofore rendered or otherwise because of any act done according to the usages of civilized warfare in the prosecution of said war by either of the parties thereto," is not inhibited by section 10 of article I of the Constitution of the United States, as it does not impair the obligation of a contract.   (p. 573.)

6. Section 35 of article VIII of the Constitution treats judgments as property and provides for the carrying out of the provision by "due process of law," and such judgments, as are contemplated by said section, were not to be set aside or destroyed, until by "due process of law" it was ascertained, that they were recovered "because of an act done according to the usages of civilized warfare in the prosecution of the war by either of the parties thereto."   (p 578.)

7. Section 35 of article VIII of the Constitution does not authorize the setting aside of the judgments therein specified and the granting of a new trial.   The judgments must stand, until "by due process of law" it is ascertained, that they were recovered "because of acts done according to the usages of civilized warfare in the prosecution of the war."   (p. 579.)

8. "Due process of law" means, as used in said section, in the due course of legal proceedings according to those rules and forms, which have been established for the protection of private rights, securing to every person a judicial trial before he can be deprived of life, liberty or property. (p. 578.)

9. The settlng aside of a judgment of the character embraced in the said section of our Constitution, and the granting of a new trial upon affidavits filed and an inspection of the record of the judgment, as provided in section 3 of chapter 58 of the Acts of 1872-3, even if a new trial had been authorized by the Constitution, is not "due process of law. (p 582.)

10. Section 3 of chapter 58 of the Acts of the Legislature of 1872-3, so far as it provides for the setting aside of the judgment or decree and the granting of a new-trial is unconstitutional and void. (p. 582.)

Writ of error and *supersedeas* to a judgment of the circuit conrt of the county of Mineral, rendered on the 2d day of February, 1878, in a petition to set aside a judgment and grant a new trial, wherein John T. Peerce was plaintiff, and Ebenezer Kitzmiller was defendant, allowed upon petition of said Kitzmiller.

Hon. John B. Hoge, judge of the third judicial circuit, rendered the judgment complained of.

JOHNSON, PRESIDENT, furnishes the following statement of the case :

On the 15th day of November, 1873, John T. Peerce filed his petition in the circuit court of Mineral county, in which he alleged, that on the 20th day of April, 1866, Ebenezer Kitzmiller brought an action of trespass in the said court against him, the said petitioner, in which he sought to recover damages against him, the defendant in said action, alleged in his declaration to have been sustained by him by reason of the defendant having taken and carried away certain cattle; that on the 23d day of March, 1869, the said plaintiff recovered a judgment in said action against the defendant for $410.00 ; that the petitioner, the defendant in said action, is a citizen of the State of West Virginia ; that he aided and participated in the late war between the government of the United States and a part of the people thereof; and that the said judgment was recovered against the petitioner, for an act done by him according to the usages of civilized warfare in the prosecution of the said war. The prayer of the petition was, that the said

judgment rendered might be set aside, and a new trial in said suit awarded him. The petition was duly sworn to by the petitioner; and the defendant was duly notified of the filing thereof.

At the May term of the said court in 1874 the said Kitzmiller appeared to said petition and demurred thereto; and leave was given him to file his answer.

On the 2d day of February, 1878, the demurrer to the petition was overruled; and the defendant filed his answer. The answer admits the recovery of the judgment; but respondent insists, that "the said judgment is final, conclusive and binding and cannot be impaired, affected or disturbed by any proceedings under said petition, because, before the judgment aforesaid was obtained, personal service was had on the said defendant, John T. Peerce, and the said Peerce appeared and pleaded to issue in the said case. The issues so made up were tried by a jury of twelve men and a verdict rendered against said Peerce. Upon said verdict the court gave judgment for the amount of the verdict; that after the rendition of said judgment and before the adoption of the present Constitution of the State of West Virginia the said judgment was duly docketed according to law in the judgment-lien-docket of Mineral county, West Virginia, and became a lien on all the lands, which the said Peerce then owned, and is still a lien on the lands he now owns; that said judgment to the extent thereof is a vested right in property and is property, to which the respondent is entitled and has good title; that said judgment is based on matters of fact tried by jury, before the present State Constitution was adopted or had any force or effect, and said judgment cannot now be otherwise re-examined than according to the rules of the common law, and this respondent cannot be deprived of his property in said judgment, without due process of law;" that the act of the Legislature of West Virginia passed March 24, 1873, upon the authority of which the petition is filed, in so far as the same may impair or affect the judgment aforesaid, is contrary to the Constitution of this State and of the United States. The respondent denies, that the acts of trespass, upon which his judgment was recovered, "were acts done by the said petitioner Peerce according to the usages of civilized warfare; but this respondent insists, that

said Peerce was a mere bummer, marauder and hanger-on of the so-called Confederate army plundering the property of peaceable citizens for private purposes, considering it safer to run off the cattle of some unarmed mountaineer, than to be found in the ranks of those, who did the fighting. And these are matters of fact which this respondent is entitled to have tried, and hereby demands to have tried by a jury, before granting the prayer of said petitioner, if the court shall be of opinion, that the same can be granted at all," &c.

On the said 2d day of February, 1878, the court below entered an order, which after overruling the demurrer and after the filing of the answer provides : "and it appearing by the record of the suit, in which said judgment was rendered, viz : the suit of *Ebenezer Kitzmiller* v. *John T. Peerce*, that pleas setting forth substantially, that the matters complained of in said suit were done in accordance with the usages of civilized warfare in the prosecution of the late war between the government of the United States and a part of the people thereof, were filed by the defendant, Peerce, and rejected or overruled by the court, the court doth set aside said judgment and award a new trial in said suit, the costs to abide the event of the suit, and doth direct, that said suit be again placed upon the docket of this court for trial." To which judgment of the court the said Kitzmiller by counsel excepted, and tendered his bill of exceptions which was signed, sealed and saved to him. The bill of exceptions shows, that in support of said petition the petitioner offered in evidence, the record of the suit referred to in the petition, which is set out in full with the special pleas filed in the suit, which pleas are of the character described in the petition, and to which pleas the plaintiff in the action demurred, which demurrer to each of said pleas was sustained by the court. The bill of exceptions concludes : "Upon which record-evidence, being all the evidence introduced in support of said petition, the court granted the prayer of said petition, set aside the judgment set forth in said petition, and granted the petitioner, John T. Peerce, a new trial in said court." To which action, &c., the said Kitzmiller excepted, &c.

To the judgment of the court setting aside said judgment and granting a new trial, a writ of error and *supersedeas* were allowed.

*J. T. Hoke* for plaintiff in error cited the following authorities: 23 Gratt. 418; Cool. Cons. Lim. 365, 366, 369, and notes; 3 H. & M. 57; 7 Rob. New Prac. 26, 1053, 1054; 20 Gratt. 53; 3 Gtto 283; 18 How. 421; 8 Rob. New Prac. 1061, 1071, 1072; Cons. U. S. Art. I, § 10; Story Cons. § 1377; *Hedges* v. *Price*, 2 W. Va.; 10 W. Va. 285; 12 Am. Rep. 347; *Blount* v. *Windley*, 5 Otto; 2 Tuck. Com. 45; 1 H. & M. 25; 20 Gratt. 53; 1 Waite Actions & Def. 16; Const. (1863) Art. II, § 7; Acts 1872-3, ch. 58, § 3; Const. (1863) Art. I, § 4; Const. (1872) Art. V, § 1; *Id.* Art. VIII, §§ 1, 2, 3, 12, 35; Cool. Const. Lim. 90, 94, 95, 392 and note; Code, ch. 135; 14 Ill. 420; 2 Eng. 173; 5 Mich. 409; 3 Greenl. 326; 7 Johns. 49; *Seibert* v. *Linton*, 5 W. Va.; *United States* v. *Klein*, 13 Wall.; 20 Gratt. 31; 47 Miss. 686; 24 Ark. 91; 37 Ga. 158; 40 Ga. 493; 41 Ala. 153; 12 Fla. 191; 25 Ark. 625; 43 Ala. 173; *Id.* 224; 50 Me. 111; 2 Me. 275; 10 N. Y. 394; 44 Mo. 570; 11 How. 185; 18 How. 421; 10 How. 395; 7 Pet. 222; 2 Pet. 380; 8 Pet. 110; 35 Ga. 26; 38 Ga. 285; 15 S. C. 84; 3 Mich. 436; 21 Mich. 390; 10 Ala. 478; 18 Ala. 193; 9 Gill & J. 365; 35 Cal. 279; 16 Cal. 11; 17 Cal. 547; Phil. (N. C.) 149; *Id.* 209; 5 Gilmer 417; 3 Scam. 238; 15 Pa. St. 18; 11 Pa. St. 490; 8 Blackf. 10; 37 Md. 64; 2 Blacks. Com. ch. 29, §§ 1, 2, 3; 4 W. Va. 646; 2 Tuck. Com. 8; 4 Stark. 1507; 5 Mass. 104; 1 H. & M. 450; 1 Rawles 121; 4 Rawles 273; 3 Watts. & S. 107; 5 Watts. & S. 17; 1 Rice (S. C.) 60; 3 Greenl. 250; 11 Mees. & W. 494; 13 Mass. 148; 9 Serg. & R. 142; 18 Johns. 454; 98 U. S. 401; Const. Art. III, § 10; 15 Wall. 10; Const. U. S. 14th, 15th Am.; Const. Art. XII, § 1; 476 Miss. 686; 13 Wall. 646; 4 Wall. 535; 1 Mich. 295; 34 Miss. 277; 15 La. Ann. 153; 15 How. 304; 1 How. 311; 15 Wis. 28; 2 How. 612; 2 Vt. 179; 43 Ala. 435; 56 Pa. St. 48; 8 Wheat. 17; 39 Ga. 493; 4 Wall. 277; 7 Gill. & J. 206; 2 H. & M. 318; Cool. Const. Lim. 351-354; *Id.* 356; 4 Hill. 140; 10 Yerg. 59; 16 Pa. St. 256; 4 McLean 498; 3 Scam. 238; 30 Wis. 129; 2 Greene (Ia.) 15; 1 Conn. 740; 4 Dev. 15; 2 Yerg. 260; 13 N. Y. 432; 2 McCord 56; 18 How. 272; 3 Ga. 31; 9 Ga. 341; 30 Wis. 129; 7 Rob. New Prac. 1-26; 53 Pa. St. 112.

*Robert White* for defendant in error cited: Const. (1863)

Art. II, § 7; Cool. Const. Lim. 173; *Id.* 87–89; *Id.* 174;
18 How. 272; 92 U. S. 90; 6 W. Va. 562; 8 W. Va. 612;
2 Pet. 407; 2 Story Const. § 1398; Smith Com. Const. Law
§§ 266, 267, 378; 3 Dall. 386; 10 How. 401; 2 Wall. 172;
7 Gratt. 233; 2 W. Va. 575; 7 Pet. 222; 9 How. 235; 10
How. 396; 23 Wall. 294; 93 U. S. 284; 23 Gratt. 409; 28
Gratt. 16; 12 Wheat. 291; 16 Ohio 599; 52 Pa. St. 480; 3
Dutch. 197; 21 Wall. 196; 61 Barb. 483; 3 Ohio 553; 2
Pet. 492; 5 Cranch 281; 15 W. Va. 208; 4 Dall. 372; 11
Pick. 350; 21 Pick. 373; 21 N. Y. 99; 29 Conn. 272; 7
Wall. 507; 42 Me. 429; 10 Ia. 470; 12 Ia. 282; 2 Dong.
197; 3 Kan. 123; 98 U. S. 401; 5 Wall. 504; 1 Hill 324;
10 N. Y. 374; 4 How. Pr. R. 145; 4 Cow. 305; 16 Barb.
192; 40 N. Y. 561; 2 Pick. 508; 9 Cush. 279; 7 Watts 300;
16 Mass. 245; 17 How. Pr. R. 459; 49 Mo. 17; 6 Cranch
138; 10 Gratt. 405; 95 U. S. 154; *Id.* 176; 96 U. S. 433;
2 Wall. 175; 57 Pa. St. 435; 2 Pet. 414; 6 Cranch 87; 8
Pet. 110; 10 How. 398; 10 Pet. 294; 17 B. Mon. 177;
Freem. Judmts. § 237; *Id.* ch. 1 § 4; 11 Pet. 420; *Id.* 572,
15 Wall. 610; 28 Gratt. 207; 29 Gratt. 717; 21 Wall. 203;
2 S. C. 216; 17 Ill. 579; 8 Pet. 88; 5 McLean 172; 61 Barb.
487; 21 N. Y. 9; 5 Tex. 33; 12 N. Y. 209; 2 Yerg. 260;
4 Wheat. 245.

JOHNSON, PRESIDENT, announced the opinion of the Court:

Three other cases partaking of the character of this are before this Court for its decision. They have all been fully and elaborately argued; and we have examined with care the arguments in all of the cases. It is strenuously insisted by counsel for the plaintiff in error, that there was no authority inherent in the court, nor was it within the constitutional power of the Legislature to give the right to the court to grant a new trial in this case, after the term, at which the judgment was rendered, had passed. It is undoubtedly true, that under such circumstances the court has no inherent power to grant a new trial; and that the proposition, sustained by an almost unbroken chain of authorities, is also true, that under a Constitution, which divides the government into three separate and distinct departments, viz: the legislative, the executive and the judicial, without especial authority in the Constitu-

tion for so doing it is beyond the power of the Legislature to authorize the courts to grant new trials in cases, after the term at which the judgments were rendered, has passed ; for such action of the Legislature would be judicial and is prohibited. Many authorities to sustain this position are cited in the briefs above referred to.

It is also contended, that the people in the adoption of a Constitution for their own government have no more power over this subject than a Legislature, and a number of authorities are cited to sustain this position.   But I think a careful review of these authorities will  disclose the fact, that while the people in the adoption of a Constitution restricted by the provisions of the Constitution of the United States cannot any more than a Legislature "pass an *ex post facto* law, or law impairing the obligation of a contract," yet that these authorities or the great weight of them with few if any exceptions limit the power of the people only to this extent.

The people of the State of West Virginia, when they adopted the present Constitution on the 22d day of August, 1872, said in section 35 of article  VIII of that instrument: "No citizen of this State, who aided or participated in the late war between the government of the United States and a part of the people thereof on either side, shall be liable in any proceeding, civil or criminal ; nor shall his property be seized or sold under final process issued upon judgments or decrees heretofore rendered  or otherwise because of any act done according to the usages of civilized warfare in the prosecution of said war by either of the parties thereto.   The Legislature shall provide, by general law, for giving full force and effect to this section by due process of law."

We well remember the occasion for inserting this unusual provision in the organic law.   The people seven years before had emerged from a civil war ; and when the war was over, and the angel of peace had spread his white pinions over a stricken country, it was sincerely hoped by those, whose love of country outweighed their malice, that forgetting the past with its bitter surroundings we would at once be brothers again, and all recollection of the cruel war with  its horrors would be drowned, in the deep of oblivion, never to be revived.    But the promise of this happy  state, which had been

"made to the ear was broken to the hope." When the sturdy Barons wrested from the weak yet despotic British Monarch *Magna Charta*, they put into that great instrument: "No free-man shall be taken or imprisoned, or be disseized of his free-hold, or liberties, or free customs, or be outlawed or exiled, or any otherwise destroyed; nor will we pass upon him, nor condemn him, but by lawful judgment of his peers, or the law of the land. We will sell to no man, we will deny to no man, we will delay to no man, either justice or right." Yet after the war had closed, a system was inaugurated in this State, which was as unjust, as it was without law elsewhere than laid down in this State with few exceptions to support it. And these exceptions were in States where the same spirit prevail-ed as here. Acts of the Legislature were passed denying any citizen the right to sit upon a jury, unless he would first take an oath, that he had given no aid and comfort to the States at war with the government; further, that no one had the right to sue in the courts, unless he would take a similar oath ; and still more, when suits were brought against those who had sup-ported the Southern Confederacy, they were denied the benefit of the plea of "belligerent rights," the only plea that could possibly avail them in such cases. *Hedges* v. *Price,* 2 W. Va. 192 ; *Williams* v. *Freeland, Id.* 306 ; *Lively ex'r* v. *Ballard, Id.* 496 ; *Echols* v. *Staunton,* 3 W. Va. 574 ; *Caperton* v. *Martin,* 4 W. Va. 138 ; *Same* v. *Nickel, Id.* 173; *Same* v. *Bowyer, Id.* 176; *Same* v. *Ballard, adm'r, Id.* 420 ; *French* v. *White, Id.* 170 ; *Carskadon* v. *Johnson, Id.* 356. The court at the same period further in disregard of the law of nations held, that an instruction to the jury, that "If the defendant was neither di-rectly nor by his orders engaged in the commission of the al-leged trespass, yet he would be liable, if he advised or aided or abetted those, who did commit the alleged trespass." *Echols* v. *Staunton,* 3 W. Va. 574. This is not directly saying, that they were liable, if they had nothing whatever to do in taking the property, yet the instruction was calculated and doubtless in-tended to give the jury to understand, that if the party sued was aiding and abetting his comrades in the prosecution of the war, he was equally liable for the property taken by said comrades, whether "aiding and abetting the taking" or not. Under these acts, and rulings of the courts many judgments were obtained.

. · The Supreme Court of the United States has distinctly held, that the plea of "belligerent rights" is a good plea, and if proved, the defendant ought not to be held responsible. The people therefore, when they adopted the present Constitution, intended to remedy these wrongs as far as possible. They did not attempt any retaliatory measures, but in the interest of· peace and good government declared, that no citizen of this State, who aided or participated in the late war on either side, should be liable in any proceeding civil or criminal, and his property should not be seized or sold under final process issued upon judgments or decrees theretofore rendered or otherwise because of any act done according to the usages of civilized warfare. This was certainly a wise and humane provision and should be enforced, unless the people had no right to make it. Did they have such right?

The people of a State in their sovereign capacity, in adopting a Constitution for their government, have the right to do anything, which they are not prohibited from doing by the Federal Constitution, which was made and ratified by the States themselves. All power before the adoption of the Constitutions State and Federal resided in the people of the States, and it is and can be restrained only so far, as the people have restrained themselves in the Constitutou, which they have adopted. When the people of the Colonies separated from Great Britain, they retained all the powers of the British Parliament, which Mr. Justice Blackstone says are omnipotent; and in the State Constitutions, which they adopted, they gave up such powers only, as they deemed for the public good, and for the security of life, liberty, and property; and when the Federal Constitution was framed, some of their powers were granted to the government of the United States; but by that grant, no powers passed except such, as were delegated to the United States in the Constitution; all other powers not prohibited to the States are therein expressly reserved to the States respectively, or to the people thereof, of course the people of the States respectively, who had then entered or should thereafter enter into the compact. In recognition of this principle the Supreme Court of the United States has many times held, that the Legislatures of the States were not inhibited by the Constitution of the United States from

passing laws devesting vested rights of property unless those rights are vested by contract. If the Legislatures are not so inhibited, of course the people themselves in the adopting of a Constitution are not. *Bonaparte* v. *R. R. Co.* 1 Bald. C. C. 220; *Calder* v. *Bull*, 3 Dall. 386; *Fletcher* v. *Peck*, 6 Cranch 87; *State of New Jersey* v. *Wilson*, 7 Cranch 164; *Terrett* v. *Taylor*, 9 Cranch 43; *Satterlee* v. *Mathewson*, 2 Pet. 412; *Watson* v. *Mercer*, 8 Pet. 110; *Dartmouth College* v. *Woodward*, 4 Wheat. 625; *Ogden* v. *Saunders*, 12 Wheat. 266; *Baltimore & Susquehanna R. R. Co.* v. *Nesbitt et al.*, 10 How. 395; *Drenman* v. *Stifle*, 8 Wall. 595.

Mr. Justice Story in delivering the opinion of the Court in *Watson* v. *Mercer, supra* said: "It is clear, that this Court has no right to pronounce an act of the State Legislature void as contrary to the Constitution of the United States from the mere fact, that it devests antecedent vested rights of property." To the same effect are all the cases cited upon this subject. It is not pretended, that this constitutional provision is a bill of attainder or *ex post facto* law, but that it violates the obligation of a contract, and further, that it is inhibited by the Fourteenth Amendment to the Constitution, which declares: "Nor shall any State deprive any person of life, liberty or property without due process of law." The Fifth Amendment to the Constitution of the United States, which was in force, when all the above decisions were made, declared, that "no person shall be deprived of life, liberty or property without due process of law." But the Supreme Court has held, that this amendment does not apply to the States, but only to the general government. *Barron* v. *Mayor of Baltimore*, 7 Pet. 247; *Lessee of Livingston* v. *Moore*, 7 Pet. 551.

So the only enquiry we have to make as to the validity of the constitutional provision we are considering is: *Does it violate the obligation of a contract, and if not, does it deprive any person of property without due process of law?* Is a judgment founded upon a tort a contract?

In *Fletcher* v. *Peck*, 6 Cranch 137, *supra*, Marshall, Chief Justice, defines a contract to be a "*compact* between two or more parties." In *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 420, Mr. Justice McLean in his opinion 572 said: "What was the evil, against which the Constitution intended to provide by declar-

ing, that no State shall pass any law impairing the obligation of contracts? What is a contract and what is the obligation of a contract? A contract is defined to be an agreement between two or more persons to do or not to do a particular thing. The obligation of a contract is found in the terms of the agreement sanctioned by moral and legal principles. The evil, which the inhibition on the States was intended to prevent, is found in the history of our revolution. By repeated acts of legislation in different States during that eventful period the obligation of contracts was impaired. The time and mode of payment were altered by law ; and so far was this interference of legislation carried, that confidence between man and man was well nigh destroyed."

In *Baltimore & Susquehanna R. R. Co.* v. *Nesbitt et al.*, 10 How. at page 398 Mr. Justice Daniel in delivering the opinion of the Court said : "It must be certainly shown, that there was a perfect investment of property in the plaintiff in error by contract with the Legislature and a subsequent arbitrary devestiture of that property by the latter body, in order to constitute their proceeding an act impairing the obligation of a contract."

In *Sturges* v. *Crowningshield*, 4 Wheat. Chief Justice Marshall at page 197 in speaking of the meaning of the Constitution of the United States said : "It would seem difficult to substitute words, which are more intelligible or less liable to misconstruction than those, which are to be explained. A contract is an agreement, in which a party undertakes to do or not to do a particular thing. The law binds him to perform his undertaking ; and this is of course the obligation of his contract."

In *Todd* v. *Crumb*, 5 McLean 172 it was held, that a judgment is not an agreement, contract or promise in writing, nor is it in a legal sense a specialty.

In *Garrison* v. *City of New York*, 21 Wall. at page 203 Mr. Justice Field in delivering the opinion of the Court said :"It may be doubted, whether a judgment not founded upon an agreement express or implied is a contract within the meaning of the constitutional prohibition. It is sometimes called by text-writers a contract of record, because it establishes a legal obligation to pay the amount recovered, and by fiction of law where

there is a legal obligation to pay, a promise to pay is implied. It is upon this principle, says Chitty, that an action in form *ex contractu* will lie on a judgment of a court of record. But it is not perceived, how this fiction can convert the result of a proceeding not founded upon an agreement express or implied but upon a transaction wanting the assent of the parties into a contract within the meaning of the clause of the Federal Constitution, which forbids any legislation impairing its obligation. The purpose of the constitutional prohibition was the maintenance of good faith in the stipulations of parties against any State interference. If no assent be given to a transaction, no faith is pledged in respect to it; and there would seem in such case to be no room for the operation of the prohibition. In the proceeding to condemn the property of the plaintiff for a public street there was nothing in the nature of a contract between him and the city. The State in virtue of her right of eminent domain had authorized the city to take his property for a public purpose upon making to him a just compensation. All that the Constitution or justice required, was, that a just compensation should be made to him, and his property would then be taken, whether or not he assented to the measure."

In delivering the opinion of the court in *Blount* v. *Windley*, 5 Otto, at page 176, Mr. Justice Miller said: "The proposition of plaintiff in error is, that when he recovered the judgment against the defendant, he had a right to exact and receive in payment of that judgment gold or silver coin or the legal-tender treasury-notes of the United States, and that defendant had no right to pay him anything else; that the judgment was a contract, and the obligation of it is impaired by the statute, which authorizes payment in something else. It is undoubtedly true in some sense and for some purposes, that a judgment has been treated and considered as a contract; and we are not disposed to deny, that the judgment in this case is evidence of a contract, but the judgment is only a contract, because it is evidence of a debt or obligation on the part of defendant due to plaintiff. The judgment itself presupposes and is founded on some antecedent obligation or contract and is only a higher evidence of that contract, because it now has the sanction of the judicial

determination of its validity and amount by a court of law. The essential nature and character of the contract remains unchanged; and in deciding how far it may be affected by legislation we must look mainly to the original contract."

Mr. Justice Swayne in delivering the opinion of the court in *Edwards* v. *Kearzey*, 6 Otto 599, said : "A contract is the agreement of minds upon a sufficient consideration that something shall be done, or shall not be done."

It is clear, that a judgment founded upon a tort can in no case be regarded as a contract. There is no agreement of the parties; and there is no consideration. It is founded upon no agreement of the parties, and there could have been no consideration moving the parties in such a case. Instead of harmony there was discord; instead of agreement there was disagreement; and it would be absurd to say, that under such circumstances there could be a contract between the parties. But it is insisted by counsel for plaintiff in error that "in *Gunn* v. *Barry*, 15 Wall. 610, the Supreme Court of the United States expressly affirmed, that a convention of the citizens of a State could no more set aside a judgment or destroy a vested right than a Legislature." Let us see what was decided in *Gunn* v. *Barry*. An exemption-law of Georgia exempted from execution in favor of each head of a family "fifty acres of land and five additional ones for each of his children under the age of sixteen years, the land to include the dwelling-house and improvements, if the same do not exceed $200.00," and exempted many other things, chiefly household-furniture, wearing apparel, books, family-portraits, &c. When that law was in force, a judgment for $531.00 was recovered against the defendant in the action, who had two hundred and seventy-two and one half acres of land worth $1,300.00, and had no other property but land worth $100.00, from which the judgment could be satisfied. After this the new Constitution was adopted, which provided, that "Each head of a family should be entitled to a homestead of realty to the value of $2,000.00 in specie and personal property to the value of $1,000.00 in specie, to be valued at the time they are set apart;" and ordained further that "No court or ministerial officer in this State shall ever have jurisdiction or authority to enforce any judgment, decree or execution against said property so set apart, including such

improvements as may be made thereon from time to time, except for taxes, money borrowed or expended in the improvement of the homestead, or for the purchase-money of the same, and for labor done thereon, or material furnished therefor, or renewal of incumbrance thereon." On requirement by Gunn, the, judgment-creditor, to the sheriff of the county, Barry, that he should levy on the two hundred and seventy-seven and one half acres, Barry refused to do so, upon the ground that they had been set off to Hart, the debtor, and his family under the act of 1868, and on a petition for *mandamus* against Barry to compel him to make the levy the courts of Georgia including the Supreme Court having decided, that the refusal was right, the case was taken to the Supreme Court of the United States, where it was held, that the act of the Legislature and the Constitution violated the obligation of a contract.

It was taken for granted in that case and not controverted by any one, that the judgment was *founded upon a contract,* the obligation of which had been impaired. Mr. Justice Swayne at page 623 says: "The legal remedies for the enforcement of a contract, which belong to it at the time and place, where it is made, are a part of its obligation." This case decides, what has been conceded in this opinion, that the people of a State in adopting their Constitution cannot impair the obligation of a contract any more than a Legislature can. If the judgment had been founded upon a tort, it would have been shown in the case; but it seems to have been conceded, that it was founded on contract. It was not intended by the Court to give any different definition to "contract," than had been so often by the same Court applied to the term. That case was not intended to and does not decide, that a judgment founded on tort is in any sense whatever a contract. We conclude, that the constitutional provision, which we are considering, does not impair the obligation of a contract.

But does it deprive any person of property without due process of law? The question whether a judgment is "property" within the meaning of the constitutional prohibition has been discussed, and authorities *pro* and *con.* have been cited. Among the authorities so cited are the following: *Calder* v. *Bull,* 3 Dall. 386; *Knote* v. *United States,* 5 Otto 154; *Murray* v. *Charleston,* 6 Otto 432; *Lovejoy* v. *Murray,* 3 Wall. 1; *H. & N. R.*

*R. Co.* v. *Dickerson,* 17 B. Mon. 177 ; 12 N. Y. 209 ; 4 Barb. 64 ; 1 Atk. 182. But in this case it is not material to enquire, whether judgments are properly within the meaning of the Fourteenth Amendment to the Constitution of the United States, because section 35 of article VIII of our Constitution treats them, as if the Fourteenth Amendment applied to them, and provides for the carrying out of the provision by "due process of law." According to that provision no man is to be deprived of such judgments therein referred to, which had stood so long, that they could not then be reviewed, unless he was so deprived by "due process of law." Then clearly there is nothing in said section of our Constitution, which is prohibited by the Constitution of the United States.

Judge Cooley Constitutional Limitation 352 says: "Perhaps no definition of 'due process of law' is more often quoted than that given by Mr. Webster in the *Dartmouth College Case*: 'By the law of the land is most clearly intended the general law ; a law, which hears, before it condemns ; which proceeds upon enquiry and renders judgment only after trial. The meaning is, that every citizen shall hold his life, liberty, property and immunities under the protection of the general rules, which govern society. Everything, which may pass under the form of an enactment, is not therefore to be considered the law of the land.'"

In *Westervelt* v. *Gregg,* 12 N. Y. 209, Mr. Justice Edwards said : "Due process of law undoubtedly means in the due course of legal proceedings according to those rules and forms, which have been established for the protection of private rights."

In *Bank of Columbia* v. *Okely,* 4 Wheat. 235, Mr. Justice Johnson said : "As to the words from *Magna Charta,* interpreted in the Constitution of Maryland, after volumes spoken and written with a view to their exposition, the good sense of mankind has at length settled down to this : that they were intended to secure the individual from the arbitrary exercise of the powers of government unrestricted by the established principles of private rights and distributive justice."

In the case of *Wynehamer* v. *The People,* 13 N. Y. 432, Selden, Judge, in speaking of the New York Constitution after quoting the clauses said : "The first of these clauses had its origin in Magna Charta ; brief as it is, it embodies the

most essential guarantees against the exercise of arbitrary power, which that instrument contained. Its meaning as there used is plain, when we consider, that it was the result of a struggle, which had lasted for more than a century between the English people and the Norman Kings, who had supplanted the laws and customs of the Anglo-Saxons, and established in their place the prerogatives of royalty. The English Yeomanry, at whose instance this clause was inserted, meant by the term 'law of the land' the ancient Saxon or common law. To put any other construction upon it would render the clause utterly unmeaning. At that period in English history the King exercised legislative power; and if by 'law of the land' was meant any law, which the King might enact, the provision was a nullity. But the meaning was rendered more clear by the paraphrase of this article of *Magna Charta*, which was inserted in a subsequent statute securing privileges to the people, passed in the reign of Edward III, in which the clause, 'but by the law of the land or the judgment of his peers' was changed to the words 'without being brought to answer by due process of law.' This change shows, that the object of the provision was, in part at least, to interpose the judicial department of the government as a barrier against aggressions by the other departments. Hence both courts and commentators in this country have held, that these clauses in either form secure to every citizen a judicial trial, before he can be deprived of life, liberty or property." He cites *Hoke* v. *Henderson*, 4 Dev. 1; *Jones* v. *Perry*, 10 Yerg. 59; *Taylor* v. *Porter*, 4 Hill 140; *Embury* v. *Conner*, 3 Coms. 511; 2 Kent. Com. 13; 3 Story Com. on Cons. § 1783.

Strong, Judge, in *Huber* v. *Reily*, 53 Pa. St. 117 says of "due process of law: "It ordinarily implies and includes a complainant, a defendant and a judge, regular allegations, opportunity to answer, and a trial according to some settled course of judicial proceeding. It must be admitted, there are a few exceptional cases. Prominent among these are summary proceedings to recover debts due to the government, especially taxes, and sums due by defaulting public officers."

Judgments in our State are liens on all the defendant's real estate owned at the date of the judgment, and such as he may afterwards acquire. They are encumbrances on his real es-

tate. They are therefore valuable to the plaintiffs therein. The Constitution recognizes the high character of these securities and was careful to provide, that they should not be destroyed except by due process of law, and *not at all*, unless they were of the character designated. What was the character of judgments and decrees, which by said provision are declared nullities in effect, because no property should be seized or sold on any final process issued upon them or otherwise? They were judgments or decrees rendered "because of acts done according to the usages of civilized warfare in the prosecution of said war." If such judgment or decree was rendered against the defendant because of an act done in the prosecution of the war "according to the usages of civilized warfare," whether that act was done by the defendant in the decree or judgment, or by some one else, for which act he was held responsible, such judgment or decree upon due process of law would be held entirely inoperative, and no property could be seized or sold on any final process issued thereon. But if such judgments or decrees were not of this character, then they are entirely unaffected by the constitutional provision. By due process of law it must be ascertained, whether the decree or judgment complained of was rendered because of an act done according to the usages of civilized warfare; and not until that is done, can it be held, that those judgments or decrees are void, and that no property can be seized or sold under them. It was never contemplated by the Constitution, that there should be a new trial of such cases, in which such judgments or decrees were rendered; because if it was, then *ex necessitate* the judgments and decrees must first be set aside and all the defences let in, that could have been originally made, and if it was ascertained, that the act complained of was not done according to the usages of civilized warfare, the verdict might be for a greater or less amount, than it was before. There is no authority in the Constitution for setting aside the judgment and granting a new trial. It was not designed, and this clearly appears on the face of the section, to destroy the judgment, until it was first by a trial of the question and only the question contemplated, to wit, was the judgment or decree "rendered because of an act done according to the usages of civilized warfare in the prosecu-

tion of the war." And if upon trial ("by due process of law") it was ascertained, that the judgment or decree was rendered because of an act done according to the usages of civilized warfare in the prosecution of the war, then the judgment or decree would be judicially declared to be a nullity; and if the fact was so ascertained, that the judgment or decree was not rendered because of such act, the proceedings to nullify the judgment or decree or prevent its enforcement would be dismissed at the costs of the plaintiff therein.

. Although it was in express terms made the duty of the Legislature to provide by general law for giving full force and effect to the section by "due process of law," yet I have no doubt, that the section operates *ex proprio vigore*, and that there is in the court ample power to give full force and effect to the provision without any legislation whatever. *Johnson* v. *Parkersburg*, 16 W. Va., 402 ; *Mason* v. *Harper's Ferry Bridge Compang*, 17 W. Va., 396. The Legislature, if it had thought proper, might have conferred upon a court of chancery in all cases brought under the section invoking its aid power to submit to a jury, when an issue would not otherwise be proper, or to the court, when an issue would be proper, the question to be determined, whether the judgment or decree was recovered or rendered " because of an act done according to the usages of civilized warfare in the prosecution of the war," and that upon the verdict, if it found, that the judgment was so rendered, or upon the finding of the court upon the question, to perpetually enjoin it or pronounce it void; and if found otherwise, to dissolve the injunction, if one had been granted, and dismiss the bill. We are speaking altogether in this opinion as to judgments, which had not been enforced at the time the constitution was ratified ; whether the provision reaches any other judgment of the same character theretofore rendered and satisfied, or would give any remedy to those, who had paid them, we do not decide, as the question is not before us. But as the provision of the Constitution without legislation, the mandate of the provision being explicit, of its own vigor is in full force, a court of equity under its ordinary powers has full control over the subject, on the ground that such a judgment or decree, if rendered for the act specified in the provision, is void, just as judgments rendered

through fraud, accident or mistake will upon the showing of such facts by a court of equity be declared void. But in such cases the familiar chancery practice is, to let the judgment remain, until such facts are ascertained in the course of the regular chancery-proceedings and, if the complainant proves, that the judgment was procured by fraud, accident, or mistake, to annul the judgment and grant a new trial; but if the plaintiff fails in his proof of such facts, to dismiss the bill. Here is a new ground declared to exist, for the setting aside of judgments or decrees, to wit, if they were rendered for acts done according to the usages of civilized warfare in the prosecution of the war. If the fact appears, that they were so rendered, that is the end of them; they are void, and no judgment or decree could ever be rendered in such case. Hence a new trial would be manifestly improper, being against the whole purport and policy of the constitutional provision.

But section 3 of chapter 58 of the Acts of 1872–3 provides as follows: "That if it shall be alleged by petition under oath of the defendant, or his personal representative, to the court, in which any judgment or decree shall have been rendered, or to any court, to which such judgment or decree shall be transferred, that such judgment or decree was secured or rendered by reason of an act done by the defendant according to the usages of civilized warfare in the prosecution of said war, a copy of which having been served on the plaintiff, his agent or attorney at law, or if he be dead, upon his personal representative ten days prior to filing the same, the court shall suspend proceedings upon such judgment or decree; and being satisfied of the truth of said allegation, or if it appears by the record, that a plea setting forth, that the matters complained of were done in accordance to the usages of civilized warfare in the prosecution of said war, was filed, or offered to be filed by the defendant and rejected or overruled by the court, *shall set aside the judgment or decree and award a new trial therein*, which shall be governed by the provisions of this act, and in case the judgment or decree upon the new trial be in favor of the defendant, and he shall have paid the said judgment or decree, or any part thereof, the court shall render a judgment or decree, that the same shall be restored to the defendant with interest, and shall enforce such restitution by execution

or other proper process." As we have seen, judgments in our State are securities 'of the highest character, and here by this section are swept away certainly without due process of law; and a new trial awarded in the case. So far as this section does this, it is clearly in violation of section 35 of Art. VIII of our Constitution and is therefore void. The judgment must stand, until it is judicially ascertained by "due process of law," that it was rendered "because of an act done according to the usages of civilized warfare, in the prosecution of said war."

The judgment of the circuit court of Mineral county rendered on the second day of February, 1878, setting aside the judgment in the petition described rendered in the case of *Ebenezer Kitzmiller* v. *John T. Peerce,* on the 23d day of March, 1869, for $410.00 with interest and costs and granting a new trial therein is reversed with costs; and this Court proceeding to render such judgment as the circuit court should have rendered, the demurrer to the petition is sustained and the said petition is dismissed at the costs of the petitioner, but without prejudice to any rights either in law or equity, which the petitioner had or may have with reference to said judgment under section 35 of Art. VIII of the Constitution of West Virginia.

JUDGES HAYMOND AND GREEN CONCURRED.

JUDGMENT REVERSED.   PETITION DISMISSED.