# CHARLESTOWN.

## EX PARTE LOW.

Submitted June 28, 1884—Decided September 27, 1884.

So much of section 8 of chapter XII of the Acts of 1881, as directs the assessor and county clerk in making out the land-books for the year 1881, to disregard all changes made by the county court in the value of any tract of land made after the first day of July, 1876, is judicial legislation and, therefore, unconstitutional and void.

The facts of the case are stated in the opinion of the Court.

*J. B. Laidley* for plaintiffs in error.

No appearance for defendant in error.

SNYDER, JUDGE:

This is a writ of error to a judgment of the circuit court of Cabell county affirming a judgment of the county court of said county, denying relief to the plaintiffs in error, A. A. Low and John A. Aspinwall, upon application by them for the correction of an alleged erroneous valuation of fifteen thousand acres of land on the land-books of said county. From the bill of exceptions the facts of the case appear to be as follows :

At the general re-assessment of the lands of this State made in 1875, by commissioners under the act of December 27, 1873, a tract of one hundred and fifty thousand acres of land, lying partly in Lincoln and partly in Cabell county, was charged on the land-book of Lincoln county in the names of Low and Aspinwall, the plaintiffs in error, and was assessed by the commissioner of Lincoln county at one dollar per acre for that year, and it remained so charged on the books of that county for two years thereafter; at the expiration of said two years the county court of said county reduced the assessed value of said tract of land to fifty cents per acre, and while it thus continued assessed at fifty cents per acre, in 1878, under the provisions of chapter 98 of the Acts of 1877, fifteen thousand acres of it, being that portion

lying in Cabell county, was transferred from Lincoln to
Cabell county and entered for taxation on the books of the
latter county at the assessed value of one dollar per acre, it
remaining on the books of Lincoln county for State taxes at
fifty cents per acre.   The county court of Cabell immedi-
ately after this fifteen thousand acres had been entered by
the assessor in that county at one dollar, corrected said
entry by causing the same to be entered for taxes at fifty
cents per acre.   This entire tract of land remained and con-
tinued charged on the books of said counties at that valuation,
fifty cents per acre, until the year 1881, when the assessor and
clerk of the county court of Cabell county entered the fifteen
thousand acres lying in that county on the land-book for
taxes at the valuation of one dollar per acre.   It was to cor-
rect this erroneous entry of the valuation of said fifteen thou-
sand acres of land, made on the land-book of Cabell county
for 1881, that this application was made to the county court
of said county and this writ of error is prosecuted.

The only ground or authority upon which the clerk and
assessor made the change in the valuation of said fifteen
thousand acres of land from fifty cents to one dollar per acre
on the land-book was, so far as the record discloses and all
the facts are certified, the mandate of section 8 of the act of
March 12, 1881, chapter 12, Acts 1881, page 113.   The
question then presented for our consideration is, was said
mandate sufficient authority, of itself, to warrant the change
thus made in the assessment value of this land ?

In order to present this enquiry clearly and that there may
be an intelligent understanding of the issue raised by it, it is
necessary to make a brief review of the legislation on the
subject which preceded the said act of 1881.

The general re-assessment act of December 27, 1873, Acts
1872–3, chapter 220, page 641, after declaring the manner
of making the re-assessment of the lands in the State by the
commissioners and requiring each commissioner to return
one copy of his land-book to the clerk of the county court of
his county, on or before the first day of July, 1875, provides,
in the seventh section thereof, that "any person feeling him-
self aggrieved by the assessment of his real estate, made
under the provisions of this act may, *within one year* after the

filing of a copy of such assessment with the clerk of the county court, apply by himself or his agent to the county court for redress," and if the court finds that the valuation fixed by the commissioner is excessive or too low, "it shall fix the valuation as the facts require."

On December 20, 1875, less than six months after the filing of the land-books with the clerk of the county court as required by the aforesaid act of 1873, and before the expiration of the one year within which the county court was authorized to correct the assessment under said act, the Legislature passed an act "concerning the assessment of taxes"—Acts 1875, ch. 54 p. 80—the eighth section of which provides that, "any person aggrieved by any entry in the land-books may apply to the county court of the county in which the land is assessed for taxation for relief; and if it appears that any person so applying for relief, is improperly charged with any tract of land in quantity, *value*, or in any other manner, the court shall correct the same. If it be in value, it shall be determined by the value of contiguous lands similarly situated." And in the ninety-fourth section of said act it is provided that, "any person aggrieved by any entry in either book," (either the land or the personal property-book), " or with any assessment of a license-tax or *the valuation of any lands* or buildings may within *two years after the date of the verification*, where the entry is in either book, and within twelve months from the assessment of said license-tax, apply for relief to the county court of the county wherein the assessor gave bond and qualified."

It thus appears that the Legislature by these acts gave the county courts full power and authority to reduce or increase the assessed value of any tract or parcel of land entered on the land-books of any county and this power of the county court has no other limitation as to time than that it shall not be exercised as to the land-books of any year unless it is done within two years after the date of the verification of such land-book. This the Legislature unquestionably had the power to do, and it thereby set aside the limitation of *one year*, prescribed in the act of 1873, for the correction of any erroneous assessment or entry on the land-books. In a matter of this kind one Legislature cannot enact a statute

which may not be modified or repealed by any subsequent Legislature. Not only did the act of 1875 remove the said limitation prescribed by said act of 1873, but so did also the Legislature of 1879, in the general assessment law passed March 7, 1879—Acts 1879, ch. 73 p. 104. The eighth and ninety-fourth sections of said act uses language identical with that above quoted from the corresponding sections of the act of 1875.

The county court of Lincoln county thus being fully authorized by the statutes aforesaid to alter the assessment of any tract of land charged on the land-books of that county, whether done within one year or five years after the first day of July, 1875, the date fixed by the re-assessment act of 1873, for the return of the land-books by the commissioners to the county courts of their respective counties, it must, *ex vi termini*, be presumed that the county court of that county did, in 1877 or 1878, under the said provisions of the act of 1875, reduce the assessed value of the tract of one hundred and fifty thousand acres of the plaintiffs in error, from one dollar per acre to fifty cents per acre. This action of the court was judicial in its nature and the judgment thus pronounced was protected from being assailed collaterally in any manner or proceeding under the well established rule of law, that the sentence or judgment of a judicial tribunal, having jurisdiction of the subject-matter, is conclusive in all collateral proceedings—*Hall* v. *Lowther*, 22 W. Va. 570.

The fifteen thousand acres of this tract, which was, in 1878, transferred to the land-books of Cabell county and on which the county court of that county fixed the assessed value at fifty cents per acre, occupied the same position as did the one hundred and fifty thousand acres in Lincoln county—the assessed value in both instances being fixed by the judgment of a court of competent jurisdiction. And such was the condition of this fifteen thousand acres when the Legislature passed the aforesaid act of March 12, 1881, the eighth section of which, after declaring that the land-books for every county for the year 1881, shall be made out by the clerk of the county court and assessor of the county, contains the following provision :

"In making said land-books for said year they (the

624 EX PARTE LOW. [Sup. Ct.

assessor and clerk) shall be governed as to the value of the lands and lots in such assessment district by the land-books first made out in pursuance of the last re-assessment of the real estate made throughout the State, except so far as such re-assessment was corrected by the county court within the time prescribed by the act under which the same was made, and *they shall disregard all changes made by the county court* in the value of any tract or lot of land since the expiration of the time fixed by said act in which such change could legally be made."

The act referred to in this provision is the aforesaid act of 1873, which fixed the time within which the county court might change the assessment made by the commissioner at one year from July 1, 1875, and the evident purpose of this provision is to ignore and treat as absolutely void all judgments of the county court changing the assessed value of any lands under the said act of 1875 before mentioned which had not been made prior to July 1, 1876. This it seems to me is judicial legislation of the plainest character. It not only sets aside the solemn judgments of the county courts made under the express authority of the act of 1875, but it fixes a valuation on the lands by its own mandate. That such legislation is in direct violation of the Constitution of this State is too apparent for argument—*Peerce* v. *Kitzmiller*, 19 W. Va. 564; *Griffin* v. *Cunningham*, 20 Gratt. 31; Cooley on Tax. 224; *Supervisors* v. *Saginaw*, 26 Mich. 22; *Ervine's Appeal*, 16 Pa. St. 256; *Denny* v. *Mattoon*, 2 Allen 361.

The tax on this land, as the record shows, at the valuation of fifty cents per acre for all purposes for the year 1881, was one hundred and forty dollars, while at one dollar per acre, the value fixed by the Legislature, it made two hundred and eighty dollars. Thus, if this act is held valid, one hundred and forty dollars of the plaintiffs in error will be transferred to the State by a legislative act. This is simply a naked attempt to transfer one man's property to another by mere legislation, and this is not an authority which belongs to any legitimate government. Our Constitution expressly declares that "no person shall be deprived of life, liberty or property, without due process of law and the judgment of his peers"— article III, section 10.

For the reasons aforesaid, I am of opinion, that the said judgment of the circuit court of Cabell county be reversed with costs to the plaintiffs in error against the county of Cabell. And proceeding to enter such judgment as said circuit court ought to have entered, it is considered that the judgment of the county court of Cabell county pronounced on July 7, 1882, be reversed with costs to the plaintiffs in error, and in lieu thereof it is ordered, that the land-book of Cabell county for the year 1881 be corrected by altering the assessed value of the fifteen thousand acres of land in McComas district charged upon said book in the names of the plaintiffs in error, so as to make said value fifty cents per acre instead of one dollar as erroneously entered on said book by the assessor and clerk of the county court of said county. And this case is remanded for proceedings to carry this order into effect.

REVERSED. REMANDED.