## FREELAND *v.* WILLIAMS.

ERROR TO THE SUPREME COURT OF APPEALS OF THE STATE OF WEST VIRGINIA.

No. 267.   Argued April 17, 18, 1889. — Decided May 13, 1889.

The provision in the constitution of West Virginia of 1872 that the property of a citizen of the State should not " be seized or sold under final process.

issued upon judgments or decrees heretofore rendered, or otherwise, because of any act done according to the usages of civilized warfare in the prosecution of 'the war of the rebellion,' by either of the parties thereto," does not impair the obligation of a contract, within the meaning of the Constitution of the United States, when applied to a judgment previously obtained, founded on a tort committed as an act of public war.

A bill in equity to invalidate a judgment obtained against the defendant for a tort committed under military authority, in accordance with the usages of civilized warfare and as an act of public war and to also enjoin its enforcement, is "due process of law" and is not in conflict with the Constitution of the United States.

IN EQUITY in a state court of West Virginia to enjoin the enforcement of a judgment obtained against the complainant. Decree for the complainant. The defendant brought the case here by writ of error. The Federal question is stated in the opinion of the court.

*Mr. W. L. Cole* (with whom was *Mr. C. C. Cole* on the brief) for plaintiff in error.

*Mr. Charles J. Faulkner* and *Mr. Robert White* for defendant in error.

MR. JUSTICE MILLER delivered the opinion of the court.

This case is brought before us by a writ of error directed to the judges of the Supreme Court of Appeals of the State of West Virginia.

We can, perhaps, best present the questions of Federal cognizance, which are supposed to give this court jurisdiction, by a short statement of its history.

David Freeland, the present plaintiff in error, brought, in the Circuit Court of Preston County, in the State of West Virginia, against Joseph V. Williams and his brother Charles Williams, an action of trespass *de bonis asportatis* for the taking and conversion of cattle which were the property of the plaintiff; and on the 22d day of December, 1865, he recovered a judgment in that court against Joseph V. Williams, for $1110, with interest and costs, there being a verdict in favor of the other defendant. From that judgment the

defendant took a writ of error, on which it was affirmed in the Supreme Court of Appeals of the State of West Virginia. *Williams* v. *Freeland*, 2 West Virginia, 306. The trespass took place while the late civil war was flagrant in that part of the country. The records of the Circuit Court of Preston County, in which this judgment was rendered, have been destroyed by fire, and no transcript of the proceedings of that case is to be found in the record presented to us, except that a certified copy of the judgment of the Supreme Court of Appeals, affirming the judgment of the Circuit Court, is appended as an exhibit to the answer of Freeland made in the suit now under consideration.

The judgment thus recovered remaining unsatisfied, the defendant in that case, Joseph V. Williams, on the 15th day of August, 1883, filed his bill in chancery in the Circuit Court of Preston County, which, as it is short and contains the matter which we are called upon to review, will be here inserted, as follows:

"The bill of complaint of Joseph V. Williams, plaintiff, against David Freeland, defendant, filed in the Circuit Court of Preston County.

" *To the Honorable Wm. T. Ice, Judge of the Circuit Court of Preston County :*

"The plaintiff complains and says that the defendant instituted in the Circuit Court of said county his action of trespass against the plaintiff and a certain Charles Williams, and on the 22d day of December, 1865, recovered a judgment therein against the plaintiff alone for $1110, with interest thereon from the 4th day of January, 1864, and for the costs of the plaintiff therein expended. The record of said judgment has been destroyed by the burning of the court-house of said county. From said judgment the plaintiff obtained a writ of error and supersedeas, and the said judgment was by the Supreme Court of Appeals, at the July Term thereof, in the year 1867, affirmed; and thereafter, on the —— day of ——, 1875, the said defendant sued out an execution on said sum of

$————, with interest from the —— day of ———, and for costs and damages as was in said case then provided for by law; that the plaintiff then proceeded to invalidate and have said judgment set aside, according to an act of the legislature of the State of West Virginia, on the —— day of ———, and said judgment was by the Circuit Court of said county, by order entered in said proceedings, set aside, and a new trial ordered in said original action; that from said order an appeal was taken by said Freeland, and said order was reversed and said proceedings to set aside said judgment were dismissed; and so, therefore, the said original judgment is apparently in force, although, in fact, void, for reasons hereinafter stated. The plaintiff further states that said action in which said judgment was obtained was not an action *ex contractu*, but was an action *ex delicto*; that it was, in fact, for cattle or other personal property alleged by the defendant to belong to him taken by the military authorities of the Confederate States, and taken by the soldiery and military authorities aforesaid during the late war between the government of the United States and a part of the people thereof; and the plaintiff says that said judgment was for acts done according to the usages of civilized warfare in the prosecution of said war by the said Confederate States and the military power and authority thereof. The plaintiff further states that during said war he was a citizen of the State of Virginia until the formation of the State of West Virginia, and thereafter was and has been continually since a citizen of the State of West Virginia, and is now a citizen of the State of West Virginia; that he aided and participated in said war in the armies of the said Confederate States from the time he entered the service thereof, in the year 1862, until the termination thereof. The plaintiff further states that he resides in the county of Grant, and is the owner of real estate therein; that said judgment has been docketed in his said county, as he believes, and has occasioned a cloud upon his title to said property. The plaintiff further says that he is advised that said judgment is void, and that his property is not liable to be seized or sold therefor, and, notwithstanding said judgment is void, he is threatened

and is in danger of having his property so seized and sold to satisfy said judgment, and the value and salable character of his said real estate by reason of the cloud on the title thereof as aforesaid is greatly impaired. The plaintiff further states that he has not full or adequate relief against said judgment, except by this his bill and the due process of law thereby, and by the enforcement of the protection afforded by the 35th section of the 8th article of the constitution of this State in his behalf, and to have said judgment by judicial authority declared void and inoperative. The plaintiff therefore prays that said judgment be declared void; that the defendant be perpetually enjoined and restrained from collecting the same and every part thereof, whether of principal, interest, cost, or damages, and from suing out execution thereon; and that he may have such other relief as the court may see fit to grant.

" JOSEPH V. WILLIAMS,<br>" <em>By Counsel.</em>"

To this bill there was a demurrer by Freeland, and also an answer. The demurrer relies upon the proposition that the 35th section of article 8 of the constitution of the State, which the plaintiff in that case sets up as the foundation of his relief, is in conflict with the 10th section of the first article of the Constitution of the United States, and also with the 1st section of the 14th article of amendment to that constitution, and is therefore null and void. The answer sets out the same matter, and also says that the judgment was for a lot of cattle owned by Freeland and taken and converted by the plaintiff, but *not* in accordance with the usages of civilized warfare; and that Williams went to trial on the plea of not guilty to the action of trespass for the recovery of the value of these cattle, though the plaintiff might have waived the trespass and declared in assumpsit.

To this there was a replication, and testimony by way of depositions was taken on the issue as to whether the taking, on which the original judgment for the plaintiff rested, was an exercise of belligerent rights, and was done according to the usages and principles of public war. There can be no question

that these depositions establish the fact that Williams, the defendant in the original action, was a soldier under the command of General Fitzhugh Lee, whose force was dominant in that part of West Virginia in January, 1864, and that it was under his orders that the cattle were seized while Lee was on a raid through that county, the object of which was to get beef cattle, and the order of the commanding officer was to take beef cattle and surplus horses.

Upon the final hearing the Circuit Court rendered its decree in the following language:

"It is therefore considered by the court that the judgment in the bill mentioned in favor of the defendant, against the plaintiff, described as a judgment rendered by the Circuit Court of Preston County, on the 22d day of December, 1865, for $1110, with interest thereon from the 4th day of January, 1864, and the costs, is void, and that the defendant be perpetually enjoined and restrained from the enforcement and collection of the same and every part thereof, and that the defendant do pay to the plaintiff his costs herein."

Thereupon Freeland, the present plaintiff in error, made application, according to the laws of West Virginia, by a petition, for an appeal, which petition was denied. This denial, as in the case of similar proceedings in the State of Virginia, this court has held to be a final judgment of the highest court of the State, which can be reviewed in this court in a proper case.

The errors assigned, and the questions presented by counsel and by this record, are substantially two: 1st. That the new constitution of West Virginia, relied on as the foundation of relief by the defendant in error, is a violation of that clause of the Constitution of the United States which declares that no State shall pass any law impairing the obligation of contracts. Section 10, Art. I, of the original Constitution. 2d. That it violates the provision of the 1st section of the 14th article of amendment, viz., that no State shall "deprive any person of life, liberty or property without due process of law."

It is proper to observe that counsel have commented upon the fact that the defendant Williams, in the original action

of trespass, filed certain pleas setting up the fact that what he did in the way of seizing the cattle was under order of superior military authority, and in the exercise of belligerent rights, and that, therefore, he was not personally liable to the plaintiff for the alleged trespass. But there is no evidence in this record that any such pleas were ever offered to be filed, or were rejected by the trial court; nor is any such fact stated by Williams in the bill which is the foundation of the suit now before us.

It is very true that this circumstance is mentioned in some of the opinions of the Supreme Court of Appeals of the State, in one of the cases where this matter was before it; but this could not be received as evidence of a fact not found in the record, even if those opinions and judgments had been made a part of this case by reference or otherwise. But this matter is, we think, immaterial in regard to the issue presented here. The defence which Williams now says he offered to make by those pleas was competent under the plea of not guilty, on which the case was tried; and in the depositions taken in the present case on the bill for an injunction it is made quite clear that such a defence was offered, but held to be insufficient by the court.

The constitutional provision of the State of West Virginia, adopted by vote of the people on the 22d of August, 1872, on which the defendant in error mainly relies in support of the decree rendered in this case, is the 35th section of the 8th article of that instrument, and reads as follows:

"No citizen of this State who aided or participated in the late war between the government of the United States and a part of the people thereof, on either side, shall be liable in any proceeding, civil or criminal; nor shall his property be seized or sold under final process issued upon judgments or decrees heretofore rendered, or otherwise, because of any act done, according to the usages of civilized warfare, in the prosecution of said war, by either of the parties thereto. The legislature shall provide, by general law, for giving full force and effect to this section by due process of law."

The legislature of West Virginia undertook to discharge the

duty imposed by this constitutional provision, by section 3 of chapter 58 of the acts of 1872–3, which is in the following language:

"That if it shall be alleged by petition, under oath of the defendant, or his personal representative, to the court in which any judgment or decree shall have been rendered, or to any court to which such judgment or decree shall be transferred, that such judgment or decree was recovered or rendered by reason of an act done by the defendant according to the usages of civilized warfare in the prosecution of said war, a copy of which having been served on the plaintiff, his agent or attorney at law, or, if he be dead, upon his personal representative, ten days prior to filing the same, the court shall suspend proceedings upon such judgment or decree; and being satisfied of the truth of said allegation, or if it appears by the record that a plea, setting forth that the matters complained of were done in accordance to the usages of civilized warfare in the prosecution of said war, was filed, or offered to be filed, by the defendant, and rejected or overruled by the court, *shall set aside the judgment or decree, and award a new trial therein*, which shall be governed by the provisions of this act; and in case the judgment or decree upon the new trial be in favor of the defendant, and he shall have paid the said judgment or decree, or any part thereof, the court shall render a judgment or decree that the same shall be restored to the defendant, with interest, and shall enforce such restitution by execution or other proper process."

The Supreme Court of Appeals of the State of West Virginia, in the case of *Peerce* v. *Kitzmiller*, 19 West Va. 564, held in a case precisely similar to this, that while the constitutional provision of that State was not in violation of any provision of the Constitution of the United States, the mode prescribed by the legislature for obtaining the relief which the new constitution authorized was not due process of law, and that the statute was void. But it also held that the provisions of the constitution, and the relief which it intended to give, might be carried into effect by proceedings in courts, which would be due process of law, and intimated that a proceeding in chan-

cery for an injunction against the execution of the original judgment might be such due process of law. We are, therefore, relieved from any further consideration of the special provisions of this statute, and are remitted to the question of conflict between the constitutional provision of 1872 of the State of West Virginia and the Constitution of the United States.

As we have already said, the first of the questions thus presented is whether that constitutional provision, in its application to a judgment like the present, in existence when this state constitution was adopted, impairs the obligation of a contract.

On this question the court has very little difficulty. The proposition that a judgment, duly rendered in a court of law, in an action of tort, is protected by this provision of the Federal Constitution, has been before us more than once in recent years, and was before this court also many years ago.

In the case of *Louisiana* v. *Mayor of New Orleans,* 109 U. S. 285, the precise question was presented and very fully considered. In that case, a judgment was recovered against the city of New Orleans for injuries received by the riotous proceedings of a mob. At the time when this judgment was rendered the laws of Louisiana authorized taxes to be levied to pay all judgments rendered against the city. Afterwards changes were made in the laws on the subject of taxation, so that the power of the city to levy taxes was limited in such a manner that no taxes could be raised that could be appropriated to the payment of this judgment. An application was made to the Supreme Court of Louisiana to compel the city authorities of New Orleans to levy taxes to pay this judgment, which was denied by that court. The case was brought here on a writ of error, on the ground that the statute, under which the court of Louisiana denied the writ of mandamus, impaired the obligation of the contract found in the judgment in favor of the plaintiffs against the city. This court held, however, that that judgment was not a contract, and was not evidence of a contract within the meaning of the constitutional provision. The whole question of the nature of judgments, as

being founded upon torts, or founded upon contracts, as they relate to that provision, was very fully discussed; and, while it was conceded that such a judgment might be declared upon as a specialty, or a contract of record, under the old authorities, such a proposition could not "convert a transaction, wanting the assent of parties, into one which necessarily implies it. Judgments for torts are usually the result of violent contests, and, as observed by the court below, are imposed upon the losing party by a higher authority against his will and protest. The prohibition of the Federal Constitution was intended to secure the observance of good faith in the stipulation of parties, against any state action. Where a transaction is not based upon any assent of parties it cannot be said that any faith is pledged with respect to it; and no case arises for the operation of the prohibition. *Garrison* v. *City of New York*, 21 Wall. 203. There is, therefore, nothing in the liabilities of the city, by reason of which the relators recovered their judgments, that precluded the State from changing the taxing power of the city, even though the taxation be so limited as to postpone the payment of the judgments."

The case of *Garrison* v. *City of New York*, 21 Wall. 196, above referred to, sustains the proposition for which it is quoted. In that case a proceeding to condemn certain real estate in the city of New York, for the purpose of widening Broadway, had been carried to its end, and an assessment was made in favor of Garrison for taking his property to the amount of $40,000. On this a judgment or order of confirmation was entered in the proper court. The legislature of New York subsequently passed a statute authorizing an appeal from the order of confirmation, to be taken by the city at any time within four months, and made it a duty of the court to which such application should be made that, if it should appear there was any error, mistake or irregularity at any stage of the proceedings, or that the assessments or awards had been unfair and unjust, to vacate the order of confirmation and refer the matter back to new commissioners, who should proceed to amend and correct the report.

This court said, in reviewing the judgment of the Circuit

Court for the Southern District of New York on that question, that "the objection to the act of 1871, that it impairs the vested rights of the plaintiff, and is, therefore, repugnant to the constitution of the State, is already disposed of by what we have said upon the first objection. There is no such vested right in a judgment, in the party in whose favor it is rendered, as to preclude its reëxamination and vacation in the ordinary modes provided by law, even though an appeal from it may not be allowed; and the award of the commissioners, even when approved by the court, possesses no greater sanctity." The language there used, and the circumstances of that case, are eminently applicable to the one now before us.

In the earlier case of *Satterlee* v. *Matthewson*, 2 Pet. 380, in an action of ejectment between the parties, twice tried before the Supreme Court of the State of Pennsylvania, that court had held the law to be, as it undoubtedly was in that State, that the doctrine that a tenant was estopped to deny the title of his landlord was inapplicable to cases where the title originated under the claim of the State of Connecticut to lands in the State of Pennsylvania. While a third trial, of the same case, between the same parties, was pending, the legislature of the State of Pennsylvania passed a statute to the effect that the "relation of landlord and tenant shall exist and be held as fully and effectually between Connecticut settlers and Pennsylvania claimants as between other citizens of this commonwealth, on the trial of any cause *now pending*, or hereafter to be brought within this commonwealth, any law or usage to the contrary notwithstanding."

The Supreme Court of the State of Pennsylvania conformed its judgment to this statute, which was at variance with the rights established by the two former judgments. The case came to the Supreme Court of the United States, and was argued before that court on the ground that the statute impaired the obligation of the contract between the tenant and the landlord, and also the obligation of the contract by which one party derived his title from the Connecticut claim. The court held that no such question was raised; that there was no contract in the case affected by this provision of the statute.

The opinion, however, is more remarkable, and more pertinent to the present case, in its discussion of the doctrine of vested rights under judgments of a court, and under the condition of the title to the property existing at the time the statute was passed.

We are of opinion that the constitution of West Virginia of 1872, in its provision for this class of cases, does not violate the obligation of a contract, where the judgment was founded on a tort committed as an act of public war.

The other question which we are called upon to decide presents more difficulty. Ever since the case of *Dow* v. *Johnson*, 100 U. S. 158, the doctrine has been settled in the courts, that in our late civil war each party was entitled to the benefit of belligerent rights, as in the case of public war, and that, for an act done in accordance with the usages of civilized warfare, under and by military authority of either party, no civil liability attached to the officers or soldiers who acted under such authority. The case as it is now presented to us shows that the trespass for which the original judgment was rendered was of that character; and it is argued with much force that the court which rendered that judgment had no jurisdiction of the case, or, at all events, had no jurisdiction to render such a judgment, and that it is therefore void.

It follows from this view of the subject that the court in which it was originally rendered had jurisdiction to set it aside or annul it without the aid of the constitutional provision of the State of West Virginia, and that, on that ground alone, the decree we are called upon to review must be affirmed. In this view of the subject some of the judges of this court concur.

On the other hand, it is argued that, from what appears to have been done in that court, it was an action of which the the court had jurisdiction when it was brought; that the case presented to it by the pleadings was a simple act of trespass *de bonis asportatis*, in which the defendant wrongfully seized and carried off the cattle of the plaintiff. On the issue of not guilty, judgment was rendered for the plaintiff. Whether the question of belligerent rights was there presented and tried is not to be ascertained from its records, 1st, because no record

of the proceeding exists in that court; and, 2dly, because it does not appear from anything of record now to be found that the question of belligerent rights was there considered. Nor are we prepared to admit, if it was considered and decided against the defendant, that the judgment is wholly and absolutely void. It is not here denied that the doctrine of *Dow* v. *Johnson* is correct, and that parties are protected by that doctrine from civil liability for any act done in the prosecution of a public war. But one of the very things to be decided, when an act like this is brought in question, and the defence is that it was done in the exercise of belligerent rights, is whether this defence is established by the evidence.

As regards the case now before us, we are of opinion that the judgment rendered by the Circuit Court of Preston County in this case is *prima facie* a valid judgment. On the face of the record, if the record now existed, as set forth in the case before us, it would be *prima facie* valid. It is only the facts proved by the evidence taken in the present case which impeach that judgment and establish that it was rendered on account of acts done in pursuance of the powers of a belligerent in time of war.

Without, therefore, considering whether this judgment is absolutely void, or whether there existed any rule of law known to the court by which its validity could be inquired into before the adoption of the constitutional provision of the State of West Virginia, we proceed to inquire how the matter stands with the aid of that provision and under all the circumstances of this case. The proposition of the plaintiff in error is, that by the judgment of the Circuit Court of Preston County he had acquired a vested right in that judgment; that the judgment was his property; and that any act of the State which prevents his enforcing that judgment, in the modes which the law permitted at the time it was recovered, is depriving him of property without due process of law, and, therefore, forbidden by the 14th Amendment of the Federal Constitution. This right of the plaintiff to enforce that judgment is insisted upon as a vested right with which no authority can lawfully interfere.

It is to be observed, in the first place, that the language of the prohibition against state interference with life, liberty or property is that the deprivation of these precious rights shall not be had without due process of law. This phrase, "due process of law," has always been one requiring construction; and, as this court observed long ago, never has been defined, and probably never can be defined, so as to draw a clear and distinct line, applicable to all cases, between proceedings which are by due process of law and those which are not.

Judgments, however solemn, however high the court which rendered them, and however conclusive in a general way between the parties, have been subject to review, to reconsideration, to reversal and to modification by various modes. Among these are motions for new trials, appeals, writs of error and bills of review; and these have always been held to be due process of law. So, also, judgments of courts of law have been subject to be set aside, to be corrected and the execution of them enjoined, by bills in chancery, under circumstances appropriate to such relief. This also must be held to be due process of law.

The present case is a bill in chancery to enjoin the execution of a judgment, and such was the relief granted by the decree of the court. In that respect it is one of the recognized processes of law for reëxamining the matters on which a judgment is founded and making such corrections, even to setting aside the whole judgment or perpetually enjoining its execution, as by the rules of equity jurisprudence are just and appropriate to the occasion. Undoubtedly the mode pursued in this case of obtaining relief against the judgment of the Circuit Court of Preston County is in its form due process of law. It is by an appeal to the courts in their regular course of procedure, and is not by any summary or unusual process applied to the determination of the rights of parties.

If it be true that, when the original action was presented to the Circuit Court of Preston County, the thing complained of was found to be an act in accordance with the usages of civilized war, during the existence of a war flagrant in that part of the country, that court should have proceeded no further,

and its subsequent proceedings may be held to have been without authority of law. While it is not necessary to hold that the judgment, as presented by the record, is absolutely void, it may be conceded that a court of equity, in a proper case, can prevent the enforcement of it. But the application of this remedy may have been, and probably was, embarrassed in this case by circumstances which would render it unavailing. There might be raised against it the proposition that the defence had been presented and considered by the court in which the case was tried. Lapse of time might have prevented a court of equity from redressing the wrong inflicted by the judgment. It may have been doubtful whether the case was one of equitable cognizance; it may have been insisted that the jury passed upon the facts of the case adversely to the defendant; and it is undoubtedly true that the Supreme Court of Appeals of the State of West Virginia had decided, in this class of cases, that the defence that the party was acting in accordance with belligerent rights was not a sufficient defence.

These reasons, and probably the latter one mainly, were those upon which the constitutional convention of West Virginia acted, in framing the provision which we have already cited on this subject. Was it competent for that convention to establish a rule of law which is now the recognized rule of this court, and perhaps of all the courts of the United States, which is commended by the highest authorities, and which is eminently adapted to the purpose of quieting strife and securing repose after the turmoils of a civil war, although the principle asserted was in opposition to that held by the Supreme Court of Appeals of the State? That this principle would govern all cases where the act for which the party was sued occurred after its establishment does not admit of question. That it was the law of the country before its adoption by the state constitution there is as little doubt. Shall it be held to be incapable of enforcement and forbidden by the Constitution of the United States because it is made to cover judgments already rendered in violaton of the principle asserted? The constitution of the State remedies the defects of the proceeding by bill in chancery; it creates no new process of law; it

makes that which has always been due process of law efficient by removing objections and obstructions to its operation. It simply declares that a judgment for a wrong or tort, which in itself was erroneous, is a voidable judgment, and may be avoided, if it can be brought within the due processes of the law already existing, and shall by this means be inquired into, and if it is against right, justice and law, shall be no longer in force, and the judgment plaintiff shall be forever enjoined from putting it into execution.

Prior to the adoption of the 14th Amendment the power to provide such remedies, although they may have interfered with what were called vested rights, seems to have been fully conceded. The cases in which this had been decided in this court are *Calder* v. *Bull*, 3 Dall. 386 ; *Satterlee* v. *Matthewson*, 2 Pet. 380; *Sampeyreac* v. *United States*, 7 Pet. 222; *Watson* v. *Mercer*, 8 Pet. 88 ; and *Freeborn* v. *Smith*, 2 Wall. 160. In the latter case, Mr. Justice Grier, when the Congress of the United States had allowed an appeal where the judgment would have otherwise been final, used this language : " If the judgment below was erroneous, the plaintiff in error had a moral right at least to have it set aside, and the defendant is only claiming a vested right in a wrong judgment." And he thus quotes the language of Chief Justice Parker, in *Foster* v. *Essex Bank*, 16 Mass. 245 : " The truth is there is no such thing as a vested right to do wrong ; and a legislature, which, in its acts not expressly authorized by the constitution, limits itself to correcting mistakes, and to providing remedies for the furtherance of justice, cannot be charged with violating its duty, or exceeding its authority."

Many other cases might be cited in which it was held that retrospective statutes, when not of a criminal character, though affecting the rights of parties in existence, are not forbidden by the Constitution of the United States.

We do not think that the Supreme Court of Appeals of West Virginia, which seems to have carefully considered the question of due process of law in the case of *Peerce* v. *Kitzmiller*, and held that the statute of the State in carrying out the provisions of the constitution did not provide due

process of law, was in error when it also held that the remedy provided by the constitution of the State as carried out by the ancient proceeding of a bill in a court of equity, was not void for want of due process of law, nor in conflict with the Constitution of the United States.

Its judgment is therefore                    *Affirmed.*

MR. JUSTICE HARLAN dissenting.

In *Ford* v. *Surget*, 97 U. S. 574, 605, this court, speaking by the writer of this opinion, said that to the Confederate army was " conceded, in the interest of humanity, and to prevent the cruelties of reprisals and retaliation, such belligerent rights as belonged under the laws of nations to the armies of independent governments engaged in war against each other — that concession placing the soldiers and officers of the rebel army, as to all matters directly connected with the mode of prosecuting the war, ' on the footing of those engaged in lawful war,' and exempting ' them from liability for acts of legitimate warfare.' " It necessarily results from this doctrine, without reference to the provision of the Constitution of West Virginia, that Williams was not civilly responsible for the value of the cattle in question, if, at the time he took them, he was regularly enlisted as a soldier in the Confederate army, and if his taking of them was consistent with the usages of civilized warfare." If the taking was not an act of war, but a mere trespass, his being a soldier in the Confederate army would not have constituted a defence. But whether he was or was not a soldier in that army, and whether his act was or was not one of legitimate warfare, were questions determinable in the action of trespass instituted against him in the Circuit Court of Preston County. It is not disputed that it was open to him, in that action, to prove every fact relied upon in the present suit as establishing immunity from civil responsibility for the taking of Freeland's cattle. There was a verdict and judgment against him, and that judgment, upon writ of error to the Supreme Court of Appeals of West Virginia, was affirmed in 1867. No writ of error was prosecuted to this court.

If the taking of the cattle was illegal, the right to recover from the wrongdoer their reasonable value was an absolute one, of which the owner could not be deprived by a legislative enactment of the State, or by an amendment of its constitution. The judgment obtained by Freeland was an adjudication that the taking was illegal. He acquired by that judgment a vested right to have and demand the amount named in it, as well as the benefit of such remedies as the law gave for the enforcement of personal judgments for money. The judgment was, therefore, property of which the State could not deprive him, except by due process of law. And a constitutional provision, subsequently enacted, declaring that the defendant's property should not be seized or sold under final process on such judgment, is not due process of law. I cannot agree that a State may, by an amendment of its fundamental law, prevent a citizen from recovering the value of property, of which, according to the final judgment of its own courts, he has been illegally deprived by a mere trespasser. That would be sheer spoliation under the forms of law. If the amendment in question had, in terms, given the defendant a right to a new trial of the action of trespass in the same court, after the time had passed within which, according to the settled modes of procedure, he could, of right, apply for a new trial, it would have accomplished, in respect to the judgment against him, precisely what, in effect, has been held in this case to be consistent with the Fourteenth Amendment.

The present case is unlike *Louisiana* v. *Mayor of New Orleans*, 109 U. S. 285, 290, where the court sustained the validity, so far as the Constitution of the United States was concerned, of a state enactment so changing the laws for raising money by municipal taxation as to prevent, for the time, the enforcement of a judgment obtained against the city of New Orleans, for damages done to private property by a mob. But, even in that case, the court was careful to say that the relator was not deprived of his judgment, or of the right of himself or assignee to use it as a set-off against any demands of the city. It is, also, said: "The question of the effect of legislation upon the means of enforcing an ordinary judgment for damages for

a tort rendered against the person committing it, in favor of the person injured, may involve other considerations, and is not presented by the case before us." The radical difference between that and the present case is, that the right to sue the city of New Orleans for damages on account of private property destroyed by a mob was given by statute; whereas, the right to .claim compensation from a wrongdoer for his illegal conversion of private property to his own use is inherent in the owner, and cannot be taken from him by the State.

Nor, in my opinion, is the ruling in the present case sustained by *Dow* v. *Johnson*, 100 U. S. 158, 166. That was an action in the Circuit Court of the United States for the District of Maine, upon a judgment rendered by default in 1863 against General Dow while he was in the active discharge, within the lines of military operations, of his duties as a brigadier-general in the army of the United States. The judgment was rendered in a court of the city and parish of New Orleans. That officer was sued in the latter court for the taking of certain personal property by soldiers under his command. He was served with process, but did not appear and make defence. "The condition of New Orleans," this court said, "and of the district connected with it, at the time of the seizure of the property of the plaintiff and the entry of judgment against Dow, was not that of a country restored to its normal relations to the Union, by the fact that they had been captured by our forces, and were held in subjection. . . . The country was under martial law, and its armed occupation gave no jurisdiction to the civil tribunals over the officers and soldiers of the occupying army. They were not to be harassed and mulcted at the complaint of any person aggrieved by their action. The jurisdiction which the District Court was authorized to exercise over civil causes between parties, by the proclamation of General Butler, did not extend to cases against them. The third special plea alleges that the court was deprived by the general government of all jurisdiction except such as was conferred by the commanding general, and that no jurisdiction over persons in the military service for acts performed in the line of their duty was ever thus conferred upon it. It was not for their

control in any way, or the settlement of complaints against them, that the court was allowed to continue in existence. It was, as already stated, for the protection and benefit of the inhabitants of the conquered country and others there not engaged in the military service." General Dow, when thus sued in a local tribunal, existing by military sufferance in a country governed by martial law, was not bound, as this court said, to leave his troops and attend upon that tribunal, for the purpose of justifying his military orders, by showing that the acts complained of were authorized by the necessities of war. It was consequently held that the New Orleans court was without jurisdiction to proceed against him. There is no analogy between that case and the present one; for, the action of trespass against Williams was brought in a Superior Court of general jurisdiction, after the war closed, and when he was at liberty to appear and make defence. And it was determined by a court whose existence was independent of military authority.

The only possible ground upon which the judgment below can be sustained, consistently with the law of the land, is to hold that no court of any State had jurisdiction, in the year 1867, even with the parties before it, to inquire, in an action of trespass, whether an alleged taking of the private property of a citizen was a mere trespass, or was an act of war upon the part of the defendant, a Confederate soldier, and to give judgment according to the result of that inquiry.

But as the primary object in creating judicial tribunals is to provide a mode for the determination of controversies between individuals, and between individuals and the government, can it be said that no court had jurisdiction to inquire whether Freeland's cattle were taken by Williams without authority of law? Was the mere averment that the latter was a Confederate soldier, and that what he did was an act of war, sufficient to preclude all investigation as to the truth of that averment? If not, how was such an investigation to be had, in any effective mode, except in a court of justice? It is suggested that when the Preston Circuit Court ascertained that the taking of these cattle was legitimate warfare upon the part of Williams as a Confederate soldier, it ought to have dis-

missed the action, or directed a verdict to be rendered in his favor. But even if it erred in this respect, the judgment was not void. Its error, if any there was, could have been corrected in an appellate court. The affirmance of the judgment by the highest court of the state is to be taken as conclusive that no error was committed by the inferior state court in respect to any matter put in issue, or which was embraced by the issue tried. So if Williams failed to prove, under his plea of not guilty, that he *was* a Confederate soldier, and that his taking the cattle *was* an act of legitimate warfare, it was not in the power of the State, by an amendment of its constitution, and after a final judgment against him, to give a new trial. In legal effect, that is what was done.

According to the doctrines announced by the court, if the present and similar suits in West Virginia had been decided adversely to the several defendants therein, and such decisions had been affirmed by the highest court of that State, it would be consistent with " due process of law " for the people of that State to make a further amendment of their constitution, and give the unsuccessful litigants still another opportunity to retry the very questions of law and fact determined against them in previous actions. And so on, indefinitely, until the alleged trespasser obtained a decision in his favor. I had supposed that a final judgment, and the right of the party in whose behalf it was rendered to have the benefit of it, rested upon a firmer basis than the popular will, expressed either in a constitutional amendment or in a legislative enactment.

Without considering whether the judgment obtained by Freeland is not "a contract of the highest nature, being established by the sentence of a court of judicature," ( 2 Bl. 465 ; *Taylor* v. *Root*, 4 Keyes, 335, 344,) I place my dissent from the opinion and judgment in this case upon the ground that the state court, in the action of trespass, had jurisdiction as to person and subject matter, and that the constitutional amendment of 1872 taking from Freeland, upon the identical grounds involved in that action, the benefit of his judgment against the defendant, after it had been affirmed in the highest court of the State, deprived the former of his property without due process of law.