[No. 5551. Decided October 19, 1906.]

MARY A. GAFFNEY, *Respondent*, v. RICHARD SAXE JONES, *Appellant*.[1]

JUDGMENTS—REVIVOR—STATUTES—CHANGE OF REMEDY. The legislature has power to reduce the time within which a proceeding may be commenced to revive an existing judgment, provided the right is not thereby arbitrarily and summarily cut off; since the same pertains only to the remedy and does not affect vested rights.

Appeal from an order of the superior court for King county, Hatch, J., entered December 7, 1904, upon findings in favor of the plaintiff, after a hearing on the merits, reviving a judgment. Reversed.

*Ernest B. Herald*, for appellant.

*Joseph M. Glasgow*, for respondent.

[1]Reported in 87 Pac. 114.

## On Rehearing.

Root, J.—After an opinion was handed down in this case (August 15, 1905; 39 Wash. 587, 81 Pac. 1058), respondent interposed an elaborate and able petition and argument for rehearing, based principally upon the contention that the statute of 1897, as applied to a case of this character, constituted the taking of property without due process of law.  This point was suggested in the original briefs, but not urged or argued.  A rehearing was ordered and the parties invited to file briefs presenting such arguments as they deemed proper, and were especially requested to give their views on the following questions:  (1) Is this a proceeding to revive the judgment of the superior court or of the supreme court?  (2) If this is an action to revive a judgment of the supreme court, how does the question of the constitutionality of the statute of 1897 become material, said statute having come into effect prior to the entry of the judgment?  (3) If it is the superior court judgment that is sought to be revived, was the original proceeding (to revive) commenced in time?  (4) Does the statute forbidding a revivor of a judgment on tort amount to the taking or damaging of property within the constitutional meaning?  (5) Is a right of action upon a tort, before merged in a judgment, a property right which the legislature could not legally affect by means of a statute forbidding the revivor of judgments, as was done or attempted to be done by the statute of 1897?  The pertinency of the foregoing questions will be perceived from the following statement of facts:

The judgment of the superior court in this case was entered on the 26th day of February, 1897.  The statute involved in this case went into effect in June, 1897.  An appeal was taken from the judgment of the superior court to the supreme court of the state, which handed down an opinion on December 17, 1897, affirming the judgment of the lower court.  18 Wash. 311, 51 Pac. 461.  Judgment in the supreme

court was entered on the 21st day of January, 1898. The statute under which respondent sought to revive the former judgment requires the proceeding to revive to be commenced within six years from the date of entry of said judgment. It will be thus seen that, if the six-year period commenced to run on the date of the entry of the judgment in the superior court, February 26, 1897, more than six years had expired when this proceeding to revive was commenced on January 19, 1904. On the other hand, if it were the judgment of the supreme court that was sought to be revived, this judgment was entered January 21, 1898—some seven months after the act of 1897 had gone into effect, and consequently the latter could not be held to have had any retroactive effect. Respondent contends that it was the judgment of the superior court that was sought to be revived, and that the appeal to the supreme court tolled the running of the statute until the judgment of the latter court was entered, and that the six-year period (within which a revivor proceeding could be commenced) did not begin to run until the entry of the judgment of the supreme court on January 21, 1898. The act of 1897, which respondent claims to be unconstitutional as applied to a judgment of the character involved here, is set forth in our former opinion, 39 Wash. 587, 81 Pac. 1058.

Appellant urges that said statute is valid; that the taking away of the right to a revivor has to do only with the remedy, and that inasmuch as in this particular case the respondent had over six years within which to issue execution and enforce her judgment, the statute is, as applied to this case, in no sense obnoxious to the constitution. We think this conclusion must be sustained. The question as to how much time shall be given to a litigant to enforce a judgment which he has obtained in a court seems to us to be a matter of public policy to which the legislature may give expression by means of a statute, providing the right which the judgment evidences at the time of its entry is not arbitrarily

and summarily cut off. Where, as in this case, a judgment creditor is given over six years within which to enforce her judgment, it would seem impossible to say that her rights under said judgment were summarily or arbitrarily terminated. We think the authorities bear out the view here expressed.

An interesting case is that of *Louisiana ex rel. Folsom v. Mayor of New Orleans*, 109 U. S. 285, 3 Sup. Ct. 211, 27 L. Ed. 936. Certain persons, under the provisions of a state statute providing therefor, obtained judgments against the city of New Orleans for damages to property caused by mob violence. While these judgments remained in full force and unpaid and unsatisfied, the people of the state adopted a constitution which had the effect of preventing the city from levying a sufficient tax to pay said judgments or any portion thereof. It was contended before the supreme court of the United States that said state constitution impaired the obligation of contracts and amounted to a deprivation of property without due process of law. The court held otherwise, and while it expressly disclaimed any intention to pass upon the question of the effect of legislation upon the means of enforcing an ordinary judgment for tort, yet the principles involved would seem necessarily to apply to some extent, at least, to such cases. Mr. Justice Bradley, however, entertained and expressed a different view in an opinion concurring specially with the decision of the majority. As bearing upon the case at bar we may quote from his opinion the following:

"To abrogate the remedy for enforcing it [ordinary judgment for tort] and to give *no other adequate* remedy in its stead, is to deprive the owner of his property within the meaning of the Fourteenth Amendment."

It would seem to be implied and properly inferable from this language that such a statute or constitutional provision would be valid if some "other adequate" remedy were provided. We do not think this court can say, as a matter of

11—44 WASH.

law, that six and a half years was an inadequate period to be allowed for the enforcement of respondent's judgment. In the case just cited there was an able dissenting opinion by Mr. Justice Harlan in which, among other things, he says that "the withdrawal of *all* remedies for its enforcement, and compelling the owner to rely exclusively upon the generosity of the judgment debtor, is  .  .  .  to deprive the owner of his property." He makes no contention that such a statute would be unconstitutional if a reasonable time were allowed within which to enforce the judgment.

The case of *Freeland v. Williams*, 131 U. S. 405, 9 Sup. Ct. 763, 33 L. Ed. 193, involved the validity of a constitutional provision adopted by the people of West Virginia, providing that participants in the civil war should not be liable for, nor their property sold on account of, certain acts committed during the war. Prior to the adoption of said constitutional provision, Freeland had obtained a judgment against Williams for cattle driven off during the war. After the adoption of said provision, Williams began a proceeding in equity to enjoin the enforcement of said judgment, and obtained such a decree in the state courts. Freeland then sued out a writ of error, and the case was brought before the United States supreme court for review, the plaintiff in error urging that the state constitutional provision was in conflict with § 10, art. I, of the Federal constitution, in that it impaired the obligation of a contract, and with § 1 of the Fourteenth Amendment, in that it deprived him of property without due process of law. The court denied both contentions. Touching the latter, it said:

"The proposition of the plaintiff in error is, that by the judgment of the Circuit Court of Preston county he had acquired a vested right in that judgment; that the judgment was his property; and that any act of the state which prevents his enforcing that judgment, in the modes which the law permitted at the time it was recovered, is depriving him of property without due process of law, and, therefore, for-

bidden by the 14th amendment of the Federal constitution. This right of the plaintiff to enforce that judgment is insisted upon as a vested right with which no authority can lawfully interfere. It is to be observed, in the first place, that the language of the prohibition against state interference with life, liberty or property, is that the deprivation of these precious rights shall not be had without due process of law. This phrase, 'due process of law,' has always been one requiring construction; and, as this court observed long ago, never has been defined, and probably never can be defined, so as to draw a clear and distinct line, applicable to all cases, between proceedings which are by due process of law and those which are not. Judgments, however solemn, however high the court which rendered them, and however conclusive in a general way between the parties, have been subject to review, to reconsideration, to reversal and to modification by various modes. Among these are motions for new trials, appeals, writs of error and bills of review; and these have always been held to be due process of law. So, also, judgments of courts of law have been subject to be set aside, to be corrected and the execution of them enjoined, by bills in chancery, under circumstances appropriate to such relief. This also must be held to be due process of law. . . . Many other cases might be cited in which it was held that retrospective statutes, when not of a criminal character, though affecting the rights of parties in existence, are not forbidden by the constitution of the United States. We do not think that the supreme court of appeals of West Virginia, which seems to have carefully considered the question of due process of law in the case of *Peerce v. Kitzmiller* [19 W. Va. 564], and held that the statute of the state in carrying out the provisions of the constitution did not provide due process of law, was in error when it also held that the remedy provided by the constitution of the state as carried out by the ancient proceeding of a bill in a court of equity, was not void for want of due process of law, nor in conflict with the constitution of the United States."

In *Koshkonong v. Burton*, 104 U. S. 668, 26 L. Ed. 886, the United States supreme court among other things said:

"It was undoubtedly within the constitutional power of the legislature to require, as to existing causes of action, that

suits for their enforcement should be barred unless brought within a period less than that prescribed at the time the contract was made or the liability incurred from which the cause of action arose. . . .. And if a proper construction of that act would give the full period of six years, after its passage, within which to sue upon coupons maturing before its passage, the judgment below cannot be sustained. For this action was not instituted until more than eight years after the passage of the act of 1872. . . . There is no escape from this conclusion, unless we should hold that the legislature could not, constitutionally, reduce limitation from twenty to six years as to existing causes of action. But neither upon principle nor authority could that position be sustained."

The supreme court of Minnesota, in *Burwell v. Tullis*, 12 Minn. 572, spoke as follows:

"It would unquestionably be competent for the legislature to declare that a judgment creditor must attempt to enforce his judgment within a given time, or be afterwards denied any remedy for that purpose, and it must follow that if all remedy may be taken away, under similar circumstances, any particular remedy or a part of the remedy may also be taken away."

In the case of *Bartol v. Eckert*, 50 Ohio St. 31, 33 N. E. 294, the supreme court of Ohio, in discussing a statute as to revivor, said:

"It is well settled that a party to a suit has no vested right to an appeal or writ of error from one court to another. In *Lafferty v. Shinn*, 38 Ohio St. 46, it is stated that in the right to appeal to the courts there is not involved a further right to appeal from the judgment of the court to which such application for redress is made; on the contrary, that a right to appeal from such judgment exists only when given by statute; that such right to appeal, when so given, may be taken away by statute, even as to cases pending on appeal; and that the same thing is true with us as to proceedings in error. See *Com. v. Messenger*, 4 Mass. 469; *Ex parte McCardle*, 7 Wall. 506; *The Marinda v. Dowlin*, 4 Ohio St. 500; *Railroad Co. v. Grant*, 98 U. S. 398. We

see no satisfactory reason why a different rule should be applied to the revivor of a dormant judgment, the recovery of which implies that there has been a previous recourse to the courts, and that due process of law has been invoked. In fact, after the act of 1876 took effect, the plaintiff had over seven years within which to institute proceedings to revive the dormant judgment. . . . But the limitation in the statute did not go to the merits of the action,—to the establishment of a contested right,—but to a remedy for the enforcement of a right already established. When an alleged conflict between a statute and the constitution is not clear, the implication must always exist that no violation was intended by the legislature." ·

See, also, *Baer v. Choir*, 7 Wash. 631, 32 Pac. 776, 36 Pac. 286; *Terry v. Anderson*, 95 U. S. 634, 24 L. Ed. 367; *Cohen v. Wright*, 22 Cal. 293; *Judkins v. Taffe*, 21 Ore. 89, 27 Pac. 221; *Swampland Dist. v. Glide*, 112 Cal. 85, 44 Pac. 451; *McCormick v. Alexander*, 2 Ohio 66; *Borrman v. Schoder*, 18 Wis. 437; *Sohn v. Waterson*, 17 Wall. 596, 21 L. Ed. 737; *Stine v. Bennett*, 13 Minn. 153; *Bagby v. Champ*, 83 Ky. 13; *Whitehead v. Latham*, 83 N. C. 232; Cooley, Constitutional Limitations (7th ed.), pp. 255, 515-524; 6 Am. & Eng. Ency. Law (2d ed.), p. 952. See, also, cases cited in former opinion.

The order appealed from is reversed, with instructions to the honorable superior court to dismiss the petition.

MOUNT, C. J., HADLEY, and CROW, JJ., concur.

FULLERTON, J., concurs in the result.