## CAMERON v. CIVIL AERONAUTICS BOARD.

No. 8458.

Circuit Court of Appeals, Seventh Circuit.

Feb. 4, 1944.

Rehearing Denied March 14, 1944.

Daniel D. Carmell, of Chicago, Ill., for petitioner.

Francis M. Shea, Dept. of Justice, of Washington, D. C., J. Albert Woll, U. S. Atty., of Chicago, Ill., and G. C. Neal and S. G. Tipton, both of Washington, D. C., for respondent.

Before SPARKS, KERNER, and MINTON, Circuit Judges.

KERNER, Circuit Judge.

Petitioner, pursuant to Section 1006 of the Civil Aeronautics Act of 1938, 52 Stat. 1024, 49 U.S.C.A. § 646, seeks review of an order of the Civil Aeronautics Board restricting his airline transport pilot's certificate for thirty days, permitting him to pilot aircraft during the thirty days only while engaged in experimental work directly under the orders and control of the War Department. On petitioner's motion, enforcement of the order was stayed by this court.

The Board found that Cameron had piloted an Army B-25 airplane acrobatically over and/or within 1,000 feet horizontally of the Indianapolis Airport, in that he performed a dive followed by a steep climbing turn over buildings located on the airport, thus violating Section 60.700 of the Civil Air Regulations, 14 Code of Federal Regulations § 60.700, and also violating Section 60.3503 thereof, Ibid. § 60.3503, by descending to an altitude lower than 500 feet above the ground in executing the above-mentioned maneuvers.

Cameron, in writing, waived his statutory right to a hearing, and the Board received written evidence on which its findings were based.

■ If supported by substantial evidence, findings of facts of the Board are conclusive. 49 U.S.C.A. § 646(e). And the Supreme Court has made it plain that the appraisal of the credibility of testimony rests with the administrative board. National Labor Relations Board v. Link-Belt Co., 311 U.S. 584, 597, 61 S.Ct. 358, 85 L.Ed. 368. Recognizing this to be the law, petitioner contends there is no substantial evidence to support the Board's findings.

The record discloses that Luther E. Dillon, Chief Airport Traffic Controller, who was on duty at the Indianapolis Municipal Airport on January 20, 1943, stated in his report that the plane " * * * made a low approach from west to east barely missing the tower before landing." In asserting that this evidence lacks probative force, petitioner asserts that Dillon's report does not indicate that he personally observed the violation. Although it is true that the report did not read "I saw these acts," it is in the form customarily used by one who is an eyewitness. Being a report of a qualified chief airport traffic controller whose duty it is to make accurate observations of maneuvering airplanes, and not having been specifically controverted, the report must be treated as having substantial weight.

The report of Henry M. Hamilton, a Civil Aeronautics Authority Inspector trained to observe and who personally observed the airplane maneuvers, states:

" * * * Cameron approached Indianapolis Municipal Airport, from the East, executed a very steep turn of approximately 180 degrees, heading back in an Easterly direction, diving low over Airport, across traffic, heading Aircraft * * * directly at Control Tower, then executing steep climbing turn over Municipal Building."

"Diving aircraft across airport, ninety degrees to incoming traffic, at very low altitude, pulling aircraft up to a very steep climb, approximately 50 feet from control tower, which is located atop administration building. No prior approval asked by pilot, and no approval granted by control tower operator."

Accordingly, this evidence, too, must be accorded due weight in deciding that the evidence is substantial.

Petitioner has been a licensed airline pilot for thirteen years and his flying career has been divided into three parts: Army, testing, and airline flying. He has accumulated 1300 hours of Army flying time, 300 hours of testing, and 3700 hours of airline flying time, making a total of 5300 hours in the air. During all of this time his flying has never been questioned by pilots, control tower operators, or by the Civil Aeronautics Authority. For a period of over nine months prior to the date of the charge here involved, he had been engaged in flights of an experimental nature vital to the war effort and necessitating deviation from standard procedure.

Petitioner's statement is that " * * * all the flying involved was conducted at a safe altitude * * *"; that he did not fly over the buildings at the Indianapolis Airport; that in the absence of being able to complete two-way radio communication with the Indianapolis tower, he flew close to the control tower in accordance with standard Army practice and rocked the

plane from side to side so as to attract the attention of the control tower operator in order to let him know that he [Cameron] could hear him but that he [the control tower operator] could not hear the plane's signals. As to the steep climb maneuver and thus the violation of Section 60.3503, petitioner stated that it was done in accordance with Army instructions for slowing up the B-25 bomber preparatory to lowering the landing gear and flaps, and that it was not performed within 1,000 feet horizontally or 500 feet vertically of the Indianapolis Airport.

A review of petitioner's evidence, namely, the statements of Lieutenant Perper and Squadron Leader Falk and his own statement, discloses that the statements of Perper and Falk are framed in general terms indicating that Cameron is a careful flier—saying, in effect, that "he just couldn't do" the things complained of. Falk stated in his letter of July 22, 1943, " * * * at no time did you [Cameron] perform any dangerous manoeuvre, (What on earth do they mean by acrobatic flying; a 30° bank?) that any low flying which was done was in connection with the glide path investigation with the full concurrence of the control tower * * *"; and Lieutenant Perper states in his letter of June 5, 1943, that "Capt. Cameron did not maneuver directly above airport buildings nor did he control his airplane in an unsafe manner."

■ It is apparent that the parties have presented different versions of what actually occurred. There is sharp conflict as to whether the plane descended below 500 feet. But the Board found against petitioner, and since we believe Hamilton's and Dillon's statements constitute substantial evidence, it is clearly our duty to recognize the Board's findings as conclusive. 49 U.S.C.A. § 646(e).

■ To discredit Hamilton's report, petitioner urges that since the Administrator withdrew the other charge made by Hamilton, concerning an alleged violation occurring on January 13, 1943, it should be concluded that Hamilton is unreliable. But we do not think there is any soundness to such an argument. Even if we assume that the other charge was withdrawn because the Administrator upon investigation felt that there was not sufficient evidence to

support it, this does not mean that the present charges are unfounded. Moreover, petitioner attacks Hamilton's credibility on the ground that he stated that there were no other occupants in the plane, whereas the fact was that there were two, Lieutenant Perper and F. J. Falk. While Hamilton's report is inaccurate in this regard, it in no way affected his observation of what the plane did, and so bears only on his credibility. And the Supreme Court has ruled that: "The Board, like other expert agencies dealing with specialized fields * * * has the function of appraising conflicting and circumstantial evidence, and the weight and credibility of testimony." Link-Belt case, supra, 311 U.S. page 597, 61 S.Ct. page 365, 85 L.Ed. 368. Compare Federal Security Administrator v. Quaker Oats Co., 318 U.S. 218, 227, 228, 63 S.Ct. 589.

■ Hamilton's and Dillon's reports are attacked by petitioner because they allege violation of Civil Air Regulation 60.38, whereas the charges presented to the Board were under Civil Air Regulations 60.700 and 60.3503. We are unable to find merit in this attack because one act may constitute violation of more than one regulation. Furthermore, it clearly appears from the record that petitioner was fully apprised of the charges against him.

■ Petitioner next makes the point that the Civil Aeronautics Board has no authority to discipline a person in military service because of his following Army regulations.

This presents the question whether petitioner's acts were performed in accordance with Army regulations. True, Cameron was acting under Army orders and was flying an Army plane, but on this flight his Army orders were to fly according to contact flight rules in accordance with Civil Air Regulations. There is no conflict between the Civil Air Regulations and the Army orders or Army flight instructions. On the contrary, they are in agreement. Petitioner is charged specifically with flying below 500 feet, and diving his plane unnecessarily and then executing a steep climbing turn over buildings located on the airport. Nowhere in the evidence submitted by petitioner is it stated or shown that any such act was demanded by Army instructions.[1]

---

[1] Army Air Force Regulations provide that Air Force pilots are to comply with air traffic control procedures established by competent authority and that no pilot

Lieutenant Perper's statement that the experimental flying of a military character in which Cameron was engaged required flying of an unusual nature, and Colonel Yaeger's statement that such flying might necessitate deviation from standard flying procedures, are pure generalizations. There is nothing to show that Cameron was authorized or ordered to depart from standard practice in this instance.

Since there was no specific military order to violate a civil law or regulation here, Freeland v. Williams, 131 U.S. 405, 9 S. Ct. 763, 33 L.Ed. 193, is not applicable. After careful study of the cases in the annotation in 135 A.L.R. 37, we are of the opinion that they are also irrelevant, most of them for the same reason, i. e., they treat situations where a person in military service has been commanded to violate a civil law and been exonerated from civil liability on that account. The instant situation is far different, for petitioner's orders were to comply with the civil laws and regulations which he violated. A more persuasive analogy is presented by laws regulating the speed of motor vehicles. A person in the military service of the United States in time of war may be prosecuted for violation of such laws, where the violation was not occasioned by military necessity. See State v. Burton, 41 R.I. 303, 306, 307, 103 A. 962, 963, L.R.A.1918F, 559. Both the Civil Air Regulations and motor traffic laws have the same objective, to minimize the possibility of accidents. In the interest of safety, common sense dictates that both Army drivers and civilian drivers, Army pilots and civilian pilots, should observe the same rules where both are using the same street or airport. Here, there was no military necessity which obliged petitioner to dive below 500 feet and execute a climbing turn just above the control tower. There was no emergency. There was ample fuel in the plane to have circled the field several times at a safe altitude, and by Cameron's own testimony, he was receiving the radio signals of the control tower operator. Hence, in all probability, he would have received landing instructions very shortly if he had rocked his wings at a safe altitude. Although he asserts that he did stay at a safe altitude, the Board found that he did not. And since there is substantial evidence to support the Board's findings, we are bound to accept them.

Petitioner also complains of the Board's failure to replay the Indianapolis dictaphone record of this flight approach in order to clear up the confusion as to the actual facts in this case. But he voluntarily waived a hearing at which the record could have been produced; consequently, he is in no position to complain now.

Notwithstanding Cameron's splendid record, we are impelled to the conclusion that we must deny the prayer to set aside the Board's order. The order will be affirmed.

It is so ordered.

---

shall perform acrobatics at any height whatsoever within the area included within a radius of 10 miles of the center of any airport.